Robert WILLIAMS, Plaintiff–Appellant,

v.

Harold W. CLARKE, Defendant–Appellee.

No. 93–2733.

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 15, 1994.

Decided Dec. 2, 1994.

Rehearing and Suggestion for Rehearing En Banc Denied Jan. 25, 1995.

Paula B. Hutchinson and Vincent Powers, Lincoln, NE, argued, for appellant.

J. Kirk Brown, Asst. Atty. Gen., Lincoln, NE, argued, for appellee.

Before HANSEN, Circuit Judge, FLOYD R. GIBSON, Senior Circuit Judge, and MORRIS SHEPPARD ARNOLD, Circuit Judge.

HANSEN, Circuit Judge.

Robert Williams appeals the district court's[1] partial denial of his petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. 823 F.Supp. 1486. In 1978, a Nebraska state-court jury convicted Williams of murdering two young women, Patricia McGarry and Catherine Brooks. The jury also convicted Williams of the first-degree sexual assault of Catherine Brooks. A panel of three state trial judges sentenced Williams to death by electrocution for each count of murder and to an indeterminate sentence of imprisonment not to exceed 25 years for the sexual assault. After his direct appeal to the Supreme Court of Nebraska and two state postconviction actions proved to be unsuccessful, Williams petitioned the United States District Court for a writ of habeas corpus. Adopting the report and recommendation of the magistrate judge, the district court granted the writ for the death sentence imposed for the murder of Patricia McGarry, but the district court denied the writ for the death sentence imposed on Williams for the murder of Catherine Brooks. Williams appeals the denial of habeas corpus relief for the death sentence imposed for the murder of Catherine Brooks. We affirm the judgment of the district court.

I.

The facts giving rise to Williams's convictions and death sentences are fully described by the Supreme Court of Nebraska in Williams's direct appeal. *See State v. Williams*, 205 Neb. 56, 287 N.W.2d 18, 21–23 (1979), *cert. denied*, 449 U.S. 891, 101 S.Ct. 255, 66 L.Ed.2d 120 (1980). We summarize them as follows:

In the late afternoon of August 11, 1977, Patricia McGarry and Catherine Brooks were found murdered in McGarry's apartment in Lincoln, Nebraska. Catherine Brooks was found dead on the living room floor lying naked in a pool of blood originating from three bullet wounds to her head and back. A medical examination revealed the presence of spermatozoa in her vagina and

---

1. The Honorable Lyle E. Strom, then Chief Judge, United States District Court for the District of Nebraska, adopting the report and recommendation of the Honorable David L. Piester, United States Magistrate Judge for the District of Nebraska.

rectal tract, deposited within an hour of her death. A bloody trail led from the living room to Patricia McGarry's body, which was found dead on the dining room floor mortally wounded from three shots to her head and neck.

Williams's fingerprints were found in the apartment. Rifle shells found in the apartment matched those purchased by Williams the previous night when he had also purchased a .22 revolver. Further evidence established that on the morning of August 11, 1977, Williams went to the apartment of another young woman in Lincoln with whom Williams was acquainted. Williams threatened to shoot the young woman with a revolver and then he raped her repeatedly. Late in the afternoon, Williams ordered the woman and her two-year-old child to leave with him, but as they approached the curb, he let them go. The young woman immediately called the police. She testified that Williams drank one beer and smoked one joint of marijuana while with her that day but did not appear to be intoxicated.

The next morning, August 12, 1977, a deputy sheriff who had observed Williams's car abandoned at a park in Cherokee County, Iowa, since 10:15 p.m. the night before, had the car towed away. The same morning, an Iowa farmer observed Williams walking by his farmyard. Williams asked directions to the nearest town and the farmer gave Williams directions which led Williams past the Wayne Rowe farmhouse one-half mile west. Williams departed in that direction. Wayne Rowe returned home shortly after noon that day to find his wife on the bed naked, sexually assaulted, and murdered.

Hairs found in her hand and on the bedspread matched Williams's hair. A bullet recovered at this Iowa murder scene matched bullets taken from the bodies of the Nebraska victims. Mrs. Rowe's car was gone and a shotgun which had been in the Rowes' home was missing. Mrs. Rowe's car was later found in St. Paul, Minnesota.

On August 13, 1977, Williams abducted a man in a suburb of St. Paul and ordered him at gunpoint to drive into the city where the victim was later found bound and gagged in a railroad freight yard. This man testified that Williams did not appear to be intoxicated. Later that day, Williams shot a woman in St. Paul as she was getting into her car. Williams then drove her in her car to a remote area where he raped her, tied her up, and left her. This woman managed to live by getting herself untied and finding help at a farmhouse. Williams travelled to Chicago, Illinois, for a few days and then returned to Lincoln, Nebraska, where police arrested him in a railroad yard on August 18, 1977.

After his arrest, Williams made a statement to the police admitting that he shot both Brooks and McGarry in Lincoln but denying that he raped Brooks. The state of Nebraska charged Williams with two counts of first-degree murder and one count of first-degree sexual assault. Williams pleaded not guilty by reason of insanity. The jury returned guilty verdicts on all three counts.

At his sentencing hearing, the three-judge panel considered the aggravating and mitigating circumstances statutorily required by Nebraska Revised Statute § 29–2523.[2] The sentencing panel found the existence of four

---

**2.** Section 29–2523 provides as follows:

The aggravating and mitigating circumstances referred to in sections 29–2521 and 29–2522 shall be as follows:

(1) Aggravating Circumstances:

(a) The offender was previously convicted of another murder or a crime involving the use or threat of violence to the person, or has a substantial history of serious assaultive or terrorizing criminal activity;

(b) The murder was committed in an apparent effort to conceal the commission of a crime, or to conceal the identity of the perpetrator of a crime;

(c) The murder was committed for hire, or for pecuniary gain, or the defendant hired another to commit the murder for the defendant;

(d) The murder was especially heinous, atrocious, cruel, or manifested exceptional depravity by ordinary standards of morality and intelligence;

(e) At the time the murder was committed, the offender also committed another murder;

(f) The offender knowingly created a great risk of death to at least several persons;

(g) The victim was a law enforcement officer or a public servant having custody of the offender or another; or

of the statutory aggravating circumstances listed in § 29–2523(1), three of which applied to both murders and one of which applied solely to the murder of Catherine Brooks. The three aggravating circumstances found to exist with regard to both murders are as follows: (1) aggravating circumstance (1)(a), "The offender was previously convicted of ... a crime involving the use or threat of violence to the person, or has a substantial history of serious assaultive or terrorizing criminal activity"; (2) aggravating circumstance (1)(d), "The murder was especially heinous, atrocious, cruel, or manifested exceptional depravity by ordinary standards of morality and intelligence"; and (3) aggravating circumstance (1)(e), "At the time the murder was committed, the offender also committed another murder." The fourth aggravating circumstance, (1)(b), "The murder was committed in an apparent effort to conceal the commission of a crime, or to conceal the identity of the perpetrator of a crime"; was found to apply solely to the murder of Catherine Brooks.[3]

The sentencing panel found one mitigating circumstance—that Williams had an antisocial personality which, when coupled with his intoxication and emotional disturbance at the time, somewhat diminished his capability to conform his conduct to the requirements of law but did not excuse him from the legal consequences of his crimes. *See Williams,* 287 N.W.2d at 28. The sentencing panel found that the aggravating circumstances

outweighed the mitigating circumstance with respect to each murder and imposed the death penalty on Williams for each count of first-degree murder. The sentencing panel also imposed a term of imprisonment lasting at least 8⅓ years but not more than 25 years on the count of first-degree sexual assault.

The Supreme Court of Nebraska affirmed Williams's convictions and sentences. *See Williams,* 287 N.W.2d at 30. Williams filed an action for state postconviction relief in which the state district court denied relief and the Supreme Court of Nebraska affirmed the denial of relief. *See State v. Williams,* 217 Neb. 539, 352 N.W.2d 538 (1984). In his second state postconviction action, the state district court denied relief without an evidentiary hearing, and the Supreme Court of Nebraska reversed in part and remanded for an evidentiary hearing. *See State v. Williams,* 218 Neb. 618, 358 N.W.2d 195 (1984). After the evidentiary hearing, the state district court denied relief and the Supreme Court of Nebraska affirmed. *See State v. Williams,* 224 Neb. 114, 396 N.W.2d 114 (1986).

## II.

In 1987, Williams filed a pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 in the United States District Court raising numerous claims. Williams was furnished with court-appointed counsel who filed an amended petition raising 13 issues, 7 of

(h) The crime was committed to disrupt or hinder the lawful exercise of any governmental function or the enforcement of the laws.
(2) Mitigating Circumstances:
(a) The offender has no significant history of prior criminal activity;
(b) The offender acted under unusual pressures or influences or under the domination of another person;
(c) The crime was committed while the offender was under the influence of extreme mental or emotional disturbance;
(d) The age of the defendant at the time of the crime;
(e) The offender was an accomplice in the crime committed by another person and his participation was relatively minor;
(f) The victim was a participant in the defendant's conduct or consented to the act; or

(g) At the time of the crime, the capacity of the defendant to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of law was impaired as a result of mental illness, mental defect, or intoxication.

3. The sentencing panel did not consider Williams's subsequent acts of violence in Iowa and Minnesota. *See State v. Williams,* 217 Neb. 539, 352 N.W.2d 538, 540–41 (1984) ("sentencing court sustained Williams' objection to the use of his 66–page statement concerning Williams' violent activities in Iowa and Minnesota after the murders and sexual assault in Nebraska").

which were later voluntarily abandoned. The case was referred to a magistrate judge for a report and recommendation. In October 1989, the magistrate judge rejected each claim as meritless, except for Williams's claim that aggravating circumstance (1)(d) is unconstitutionally vague. Aggravating circumstance (1)(d) requires a finding that "[t]he murder was especially heinous, atrocious, cruel, *or* manifested exceptional depravity by ordinary standards of morality and intelligence." Neb.Rev.Stat. § 29–2523(1)(d) (emphasis added). The magistrate judge noted that the district court had previously held in *Moore v. Clarke,* CV84–L–754 (D.Neb. Sept. 20, 1988) (unpublished memorandum), that the second phrase of aggravating circumstance (1)(d), the "exceptional depravity" phrase, is unconstitutionally vague. The magistrate judge concluded that aggravating circumstance (1)(d) was unconstitutionally applied in the sentencing determination for the murder of Patricia McGarry because the use of that aggravator to impose a sentence of death for that murder was supported solely by findings relating to the constitutionally infirm second phrase. On the other hand, the death sentence imposed for the murder of Catherine Brooks properly included aggravating circumstance (1)(d) because the sentencing panel's specific finding that Catherine Brooks was sexually abused satisfies the first phrase of aggravating circumstance (1)(d) which is constitutional. However, because *Moore v. Clarke* was then on appeal to the Eighth Circuit and the outcome would control the analysis of this issue, the magistrate judge stayed Williams's habeas action pending a final decision in *Moore. See Moore v. Clarke,* 904 F.2d 1226 (8th Cir.1990), *cert. denied,* —— U.S. ——, 112 S.Ct. 1995, 118 L.Ed.2d 591 (1992).

In *Moore,* over a vigorous dissent, we held that the second phrase of aggravating circumstance (1)(d), the "exceptional depravity" phrase, is unconstitutionally vague as written and as defined by the Supreme Court of Nebraska. 904 F.2d at 1228–33. While the magistrate judge was awaiting the decision in *Moore,* we also held in another case that

regardless of the constitutionality of the second phrase, aggravating factor (1)(d) remains a valid sentencing consideration because the Supreme Court of Nebraska has appropriately limited the definition of the first phrase, the "especially heinous" phrase, rendering "that portion of the statute constitutional under *Gregg v. Georgia,* [428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976);] *Godfrey v. Georgia,* [446 U.S. 420, 100 S.Ct. 1759, 64 L.Ed.2d 398 (1980) (plurality);] and *Maynard v. Cartwright,* 486 U.S. 356, 108 S.Ct. 1853, 100 L.Ed.2d 372 (1988)." *Harper v. Grammer,* 895 F.2d 473, 479 (8th Cir.1990). Based upon these authorities, the magistrate judge recommended that the district court grant the writ with regard to the death sentence imposed for the murder of Patricia McGarry because that sentence relied on the unconstitutionally vague portion of aggravating circumstance (1)(d), and that the district court deny the writ in all other respects. The district court adopted the magistrate judge's report and recommendation. The district court issued its judgment granting the writ of habeas corpus for the death sentence imposed for the murder of Patricia McGarry because it was based in part upon the unconstitutional second phrase of § 29–2523(1)(d); and denying the writ for the death sentence imposed for the murder of Catherine Brooks, which was supported by findings under both the constitutional first phrase and the unconstitutional second phrase.

Williams appeals the district court's denial of the writ of habeas corpus for the death sentence based upon the murder of Catherine Brooks. Williams raises essentially six issues on appeal: (1) whether the sentencing panel's application of aggravating circumstance (1)(d) renders his death sentence for the murder of Catherine Brooks unconstitutional; (2) whether Williams's confession was obtained in violation of his *Miranda* rights; (3) whether the Supreme Court of Nebraska's proportionality review violated the Due Process Clause; (4) whether the death penalty in Nebraska reflects geographical bias; (5) whether the sentencing panel improperly

considered Williams's presentence report, which describes a prior assaultive history, in applying aggravating circumstance (1)(a); and (6) whether death by electrocution constitutes cruel and unusual punishment.

■ Williams did not raise the proportionality review issue before the district court or before the state courts, and we will not consider the issue for the first time in this appeal. *See, e.g., Whitmore v. Avery,* 26 F.3d 1426, 1429 (8th Cir.1994) (citing *Warden v. Wyrick,* 770 F.2d 112, 114 (8th Cir.), *cert. denied,* 474 U.S. 1035, 106 S.Ct. 600, 88 L.Ed.2d 579 (1985)). Additionally, we decline to address the issues dealing with alleged geographical bias and cruel and unusual punishment because, although Williams raised them in his pro se petition before the district court, he subsequently abandoned them and they were not considered by the district court. We consider the remaining three issues in turn.

## III.

The most significant issue before us is Williams's three-part challenge to the constitutionality of the sentencing panel's application of Nebraska Revised Statute § 29–2523(1)(d). In Nebraska, all persons convicted of first-degree murder are eligible for the death penalty. *See* Neb.Rev.Stat. §§ 28–303; 29–2520; 29–2522. Either the judge who presided at trial or a panel of three judges which must include the trial judge (unless disqualified) determines whether the sentence for a first-degree murder conviction should be life imprisonment or death. Neb. Rev.Stat. § 29–2520; *see Rust v. Hopkins,* 984 F.2d 1486, 1493 (8th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 2950, 124 L.Ed.2d 697 (1993). The sentencing judge or panel is required to consider the statutory aggravating circumstances and to weigh them against any mitigating circumstances to determine whether the death penalty is justified. *See* Neb.Rev.Stat. § 29–2522. Thus, Nebraska is a "weighing" state.

Aggravating circumstance (1)(d) exists if "[t]he murder was especially heinous, atrocious, cruel, *or* manifested exceptional depravity by ordinary standards of morality and intelligence." Neb.Rev.Stat. § 29–2523(1)(d) (emphasis added). The plain language of aggravating circumstance (1)(d) describes two separate components, requiring the sentencing panel to consider: (1) whether the murder was especially heinous, atrocious or cruel; or (2) whether the murder manifested exceptional depravity by ordinary standards of morality and intelligence. Aggravating circumstance (1)(d) "describes in the disjunctive two separate circumstances which may operate in conjunction with or independent of one another." *State v. Moore,* 210 Neb. 457, 316 N.W.2d 33, 41 (1982). However, " '[t]he two prongs are not separate factors; each of the prongs simply purports to be justification for the application of the aggravating factor.' " *Harper,* 895 F.2d at 479 (quoting the district court opinion, *Harper v. Grammer,* 654 F.Supp. 515, 540 (D.Neb.1987)).

Williams's sentencing panel found facts surrounding the murder of Catherine Brooks that support both components of aggravating circumstance (1)(d). Specifically, the panel found as follows:

The evidence establishes beyond a reasonable doubt that both murders in Count I and Count II of the Information were especially heinous, atrocious, cruel and manifested exceptional depravity by ordinary standards of morality and intelligence. The defendant killed both said victims who were defenseless and unresisting; that the commission of both of said murders by the defendant was totally and [sic] bereft of any regard for human life. The evidence further establishes that the victim Catherine M. Brooks was sexually abused by the defendant.

(Sent. Panel's Order of Sent. and Commitment at 5, June 30, 1978.) In the first sentence, the panel expressly states that both phrases of aggravating circumstance (1)(d) are satisfied. The second sentence elaborates that both victims were "defenseless and unresisting," indicating reliance on the second phrase, the "exceptional depravity"

phrase, of aggravating factor (1)(d). *See Moore,* 904 F.2d at 1230 (citing Nebraska cases attempting to define the exceptional depravity phrase); *State v. Holtan,* 197 Neb. 544, 250 N.W.2d 876, 880 (defining exceptional depravity as including "unresisting victims"), *cert. denied sub nom.* 434 U.S. 912, 98 S.Ct. 313, 54 L.Ed.2d 198 (1977). The second sentence also finds that both murders were totally bereft of regard for human life, which similarly indicates reliance on the vague "exceptional depravity" phrase. *See Moore,* 904 F.2d at 1230 (citing Nebraska's attempts to define "exceptional depravity" as "so coldly calculated as to indicate a state of mind totally and senselessly bereft of regard for human life"). In the final sentence of its findings supporting the existence of aggravating circumstance (1)(d), the sentencing panel found that Williams sexually abused the victim Catherine Brooks. *See State v. Rust,* 197 Neb. 528, 250 N.W.2d 867, 874 (without distinguishing between the two phrases, aggravating circumstance (1)(d) "would include murders involving torture, sadism, sexual abuse"), *cert. denied,* 434 U.S. 912, 98 S.Ct. 313, 54 L.Ed.2d 198 (1977). In its further findings, the sentencing panel determined that Williams had forced Brooks to disrobe before he shot her. (*See* Sent. Panel's Order of Commitment at 8) ("Brooks was forced by the defendant to remove her clothing and was thereafter shot by him while she was lying on the floor").

### A.

▮▮▮ Williams first contends that in Nebraska, sexual abuse traditionally has defined the unconstitutionally vague "exceptional depravity" phrase of aggravating circumstance (1)(d), not the "especially heinous" phrase. We find no support for this contention in Nebraska law, and we conclude that the argument provides no constitutional impediment to Williams's sentence.

Prior to Williams's sentencing in 1978, the Supreme Court of Nebraska had indicated that sexual abuse is an objective identifier of the existence of aggravating circumstance (1)(d) in general. *See Rust,* 250 N.W.2d at 874 (stating generally that aggravating circumstance (1)(d) "would include murders involving torture, sadism, sexual abuse, or the imposition of extreme suffering," but not compartmentalizing the two phrases of (1)(d)); *State v. Peery,* 199 Neb. 656, 261 N.W.2d 95, 104 (1977) (same) *cert. denied,* 439 U.S. 882, 99 S.Ct. 220, 58 L.Ed.2d 194 (1978). In *Rust,* the state court cited the Supreme Court's opinion in *Proffitt v. Florida,* 428 U.S. 242, 96 S.Ct. 2960, 49 L.Ed.2d 913 (1976), in the same discussion where the state court includes "sexual abuse" as an objective identifier of aggravating circumstance (1)(d). The *Proffitt* opinion addresses a Florida aggravating circumstance that consists solely of the "especially heinous" phrase. *See* 428 U.S. at 255 & n. 12, 96 S.Ct. at 2968 & n. 12 (citing Florida cases where this phrase was implicated—one case includes the murder of three women, one of whom was raped). In *State v. Simants,* 197 Neb. 549, 250 N.W.2d 881, 891, *cert. denied,* 434 U.S. 878, 98 S.Ct. 231, 54 L.Ed.2d 158 (1977), the Supreme Court of Nebraska adopted Florida's construction of the "especially heinous" phrase, defining it as "the conscienceless or pitiless crime which is unnecessarily torturous to the victim." *Id.* (quoting *State v. Dixon,* 283 So.2d 1 (Fla. 1973)).

After Williams was sentenced, the Supreme Court of Nebraska, citing *Rust* which was decided before Williams was sentenced, stated, "[w]e have narrowed this class [the "especially heinous" phrase] to include murders involving torture, sadism, or sexual abuse." *State v. Reeves,* 239 Neb. 419, 476 N.W.2d 829, 838 (1991), *cert. denied,* —— U.S. ——, 113 S.Ct. 114, 121 L.Ed.2d 71 (1992). *See also State v. Otey,* 236 Neb. 915, 464 N.W.2d 352, 365 (citing *Rust* ), *cert. denied,* 501 U.S. 1201, 111 S.Ct. 2279, 115 L.Ed.2d 965 (1991); *State v. Victor,* 235 Neb. 770, 457 N.W.2d 431, 443 (1990) (same), *cert. denied,* 498 U.S. 1127, 111 S.Ct. 1091, 112 L.Ed.2d 1195 (1991); *State v. Ryan,* 233 Neb. 74, 444 N.W.2d 610, 652 (1989) (same), *cert. denied,* 498 U.S. 881, 111 S.Ct. 216, 112 L.Ed.2d 176 (1990). Although *Reeves* and the other cases

that make a similar statement were decided after Williams was sentenced, they all rely on *Rust,* which was existing precedent at the time Williams was sentenced. Williams contends that this reliance is misplaced because *Rust* did not compartmentalize the two phrases of aggravating circumstance (1)(d). We find this argument unpersuasive. We give great deference to a state supreme court's interpretation of its own law. *See Missouri v. Hunter,* 459 U.S. 359, 368, 103 S.Ct. 673, 679, 74 L.Ed.2d 535 (1983). *Rust* was decided before the court recognized a need to analyze each phrase individually but this weakens neither the court's subsequent clarification nor the holding in *Rust.* Furthermore, we find it significant that the court in *Rust* expressly cited the Supreme Court's opinion in *Proffitt,* which was purely an "especially heinous" case.

Williams contends that the *Simants* case establishes clear precedent that sexual assault defines only the "exceptional depravity" phrase. We disagree. Contrary to Williams's assertion, in *Simants* the Nebraska Supreme Court did not explicitly cite sexual abuse as a limiting construction of either phrase in particular. Rather, the court concluded that *both* phrases of aggravating circumstance (1)(d) were correctly applied to the three murders that involved some degree of sexual abuse. *Simants,* 250 N.W.2d at 891. Thus, Williams's reliance on *Simants* for the proposition that sexual abuse only satisfies the "exceptional depravity" phrase is misplaced.

We conclude that sexual abuse was an objective element that satisfied and appropriately limited the definition of aggravating circumstance (1)(d) under the law of Nebraska at the time Williams was sentenced. We are further satisfied that a finding of sexual abuse is an objective factor that appropriately and constitutionally narrows the definition of the "especially heinous" phrase. Thus, the sentencing panel's finding that Williams's sexual abuse of Catherine Brooks satisfies aggravating circumstance (1)(d) cannot be successfully attacked as unconstitutional.

### B.

■ Williams contends that even if the sentencing panel's finding of sexual abuse is considered a finding under the constitutionally valid "especially heinous" phrase, Nebraska law requires specific findings on the record indicating that the victim was alive and conscious at the time of the assault in order for sexual abuse to be considered as an aggravating circumstance. Williams relies on *State v. Hunt,* 220 Neb. 707, 371 N.W.2d 708, 721 (1985), where the Supreme Court of Nebraska in 1985 held that aggravating circumstance (1)(d) did not exist where the sexual acts were practiced on a woman who was dead or unconscious at the time. Williams contends that the record in this case contains no findings that the sexual abuse occurred upon a living or conscious victim, and therefore the sexual abuse finding does not establish aggravating circumstance (1)(d). We disagree.

We first note that *Hunt* was decided subsequent to Williams's sentencing. Prior to Williams's sentencing, no such requirement had been articulated. For example, in *Simants,* where the defendant sexually abused three murder victims both prior to and after death, the Supreme Court of Nebraska found that both phrases of aggravating circumstance (1)(d) were satisfied, without distinction between sexual abuse of the living and sexual abuse after death. 250 N.W.2d at 891. In *Peery,* the court expressly stated that "an attack on a body after death may be considered in evaluating the existence of this circumstance." 261 N.W.2d at 105 (discussing aggravating circumstance (1)(d)). Second, and more importantly, the jury convicted Williams of sexual assault with regard to Catherine Brooks. That sexual assault conviction conclusively shows that the jury believed that the crime was perpetrated on a living victim. *See* Neb.Rev.Stat. § 28–319.

■ In any event, this discussion of state law is of little significance. "[T]he question to be decided by a federal court on petition for habeas corpus is not whether the state sentencer committed state-law error in relying on an adequately narrowed aggravating factor. Rather, the federal, constitutional question is whether such reliance is so arbi-

trary or capricious as to constitute an independent due process or Eighth Amendment violation." *Richmond v. Lewis,* —— U.S. ——, ——, 113 S.Ct. 528, 536, 121 L.Ed.2d 411 (1992) (citation and internal quotation omitted); *see also Bolender v. Singletary,* 16 F.3d 1547, 1570–71 (11th Cir.1994) ("federal courts do not sit to revisit a state supreme court's judgment as to whether the trial court complied with state law ... to the extent that death penalty proceedings do not produce an arbitrary or discriminatory result, the Constitution is not violated, and we will not second-guess the state courts on a matter of state law"), *cert. denied,* —— U.S. ——, 115 S.Ct. 589, 130 L.Ed.2d 502 (1994) (No. 94–6189). The Supreme Court of Nebraska has appropriately narrowed the construction of the "especially heinous" phrase by objective standards, including sexual abuse, and the sentencing panel made an explicit finding under aggravating circumstance (1)(d) that Catherine Brooks was sexually abused. That finding is presumed to be correct in this federal habeas proceeding. 28 U.S.C. § 2254(d). This objective finding is sufficient to satisfy us that no constitutional error occurred.

### C.

Williams next contends that because the sentencing panel considered both the constitutionally valid phrase *and* the unconstitutionally vague phrase of aggravating circumstance (1)(d), the death sentence imposed upon him for the murder of Catherine Brooks is unconstitutional. Williams argues that because of this constitutional error, the writ should issue to permit the state appellate court to decide whether to reweigh the aggravating and mitigating circumstances, to examine the sentence for constitutional harmless error, or to remand to the sentencing panel for resentencing. We conclude that habeas relief is not required in this case because the error is harmless beyond a reasonable doubt.

■ As previously noted, Nebraska is a "weighing state"—a state in which the sentencer must determine that sufficient aggravating circumstances exist to outweigh any mitigating factors in order to justify imposing the death penalty. *See* Neb.Rev.Stat. § 29–2522. *See also Stringer v. Black,* —— U.S. ——, ——, 112 S.Ct. 1130, 1136, 117 L.Ed.2d 367 (1992) (describing Mississippi as a "weighing" state because after finding the existence of at least one statutory aggravating factor, the jury "must weigh the aggravating factor or factors against the mitigating evidence"); *Simants,* 250 N.W.2d at 893 ("the test is whether the aggravating circumstances in comparison outweigh the mitigating circumstances"). In a weighing state, it is now settled that "there is Eighth Amendment error when the sentencer weighs an 'invalid' aggravating circumstance in reaching the ultimate decision to impose a death sentence." *Sochor v. Florida,* —— U.S. ——, ——, 112 S.Ct. 2114, 2119, 119 L.Ed.2d 326 (1992) (citing *Clemons v. Mississippi,* 494 U.S. 738, 752, 110 S.Ct. 1441, 1450, 108 L.Ed.2d 725 (1990)). Allowing the sentencer to consider "a vague aggravating factor in the weighing process creates the possibility not only of randomness but also of bias in favor of the death penalty." *Stringer,* —— U.S. ——, 112 S.Ct. at 1139. The overriding objective of a vagueness challenge is to ensure that the state provides a process that is "neutral and principled so as to guard against bias or caprice in the sentencing decision." *Tuilaepa v. California,* —— U.S. ——, ——, 114 S.Ct. 2630, 2635, 129 L.Ed.2d 750 (1994) (citing *Gregg,* 428 U.S. at 189, 96 S.Ct. at 2932). "But when the sentencing body is told to weigh an invalid factor in its decision, a reviewing court may not assume it would have made no difference if the thumb had been removed from death's side of the scale. When the weighing process itself has been skewed, only constitutional harmless-error analysis or reweighing at the trial or appellate level suffices to guarantee that the defendant received an individualized sentence." *Stringer,* —— U.S. at ——, 112 S.Ct. at 1137.

■ The previous sections in this opinion indicate that the sentencing panel actually

considered and made findings under both the constitutionally limited "especially heinous" phrase and the unconstitutionally vague "exceptional depravity" phrase of aggravating circumstance (1)(d) when deciding whether or not aggravating circumstance (1)(d) was present in the case.[4] Even though the existence of aggravating circumstance (1)(d) is constitutionally supported here, Williams's death sentence for the murder of Catherine Brooks is partially tainted by constitutional error. *See Sochor,* —— U.S. at ——, 112 S.Ct. at 2119; *Clemons,* 494 U.S. at 752, 110 S.Ct. at 1450.

Finding constitutional error, however, does not end the inquiry. Our next consideration is whether the error warrants federal habeas corpus relief. "[N]ot all constitutional violations amount to reversible error." *Satterwhite v. Texas,* 486 U.S. 249, 256, 108 S.Ct. 1792, 1797, 100 L.Ed.2d 284 (1988). Certain constitutional errors are subject to harmless error review. *See Chapman v. California,* 386 U.S. 18, 22, 87 S.Ct. 824, 827, 17 L.Ed.2d 705 (1967); *Starr v. Lockhart,* 23 F.3d 1280, 1291 (8th Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 499, 130 L.Ed.2d 409 (1994) (No. 94–470). The Supreme Court has indicated that capital sentencing error resulting from the consideration of an invalid, constitutionally vague aggravating circumstance is subject to constitutional harmless error review. *See Richmond,* —— U.S. at ——, 113 S.Ct. at 535; *Sochor,* —— U.S. at ——, 112 S.Ct. at 2119; *Stringer,* —— U.S. at ——, 112 S.Ct. at 1136; *Clemons,* 494 U.S. at 752, 110 S.Ct. at 1450. In *Clemons,* the Supreme Court expressly authorized the state appellate court to uphold a death sentence imposed in part upon consideration of a vague aggravating circumstance by either reweighing the aggravating and mitigating evidence or engaging in a harmless error review pursuant as set forth in *Chapman. Clemons,* 494 U.S. at 741–54, 110 S.Ct. at 1444. Williams contends that although the Supreme Court has authorized constitutional harmless error analysis, the

*Clemons* decision authorized *only* the state appellate court to perform the analysis in the first instance. Thus, the issue before us is whether we have authority to conduct the constitutional harmless error inquiry in the first instance or whether we must grant the writ to allow the Nebraska courts to engage in the inquiry.

Currently, the Supreme Court has neither explicitly authorized federal habeas courts to engage in the constitutional harmless error analysis that the Court authorized for capital sentencing proceedings in *Clemons* nor has the Court foreclosed us from engaging in the analysis. The Supreme Court opinions that authorize the harmless error review to remedy constitutional error resulting from the consideration of a vague sentencing factor expressly refer only to state appellate courts. *See, e.g., Richmond,* —— U.S. at ——, 113 S.Ct. at 535 ("[O]nly constitutional harmless-error analysis or reweighing at the trial or appellate level suffices to guarantee that the defendant received an individualized sentence. Where the death sentence has been infected by a vague or otherwise constitutionally invalid aggravating factor, the state appellate court or some other state sentencer must actually perform a new sentencing calculus, if the sentence is to stand"); *Stringer,* —— U.S. at ——, 112 S.Ct. at 1140 ("use of a vague or imprecise aggravating factor in the weighing process invalidates the sentence and at the very least requires constitutional harmless-error analysis or reweighing in the state judicial system"). *But see Smith v. Dixon,* 14 F.3d 956, 978 (4th Cir.1994) (en banc) ("the better reading of this passage is that 'in the state judicial system' modifies only 'reweighing'—just as 'constitutional' modifies only 'harmless-error analysis' ") (quoting *Stringer,* —— U.S. at ——, 112 S.Ct. at 1140), *cert. denied,* —— U.S. ——, 115 S.Ct. 129, 130 L.Ed.2d 72 (1994) (No. 93–9353). The language used in these cases provides no guidance as to the role of the federal habeas court in addressing the ques-

---

4. The sentencing panel's findings with respect to aggravating circumstance (1)(d) relating to the

murder of Patricia McGarry satisfied only the unconstitutional "exceptional depravity" phrase.

tion of harmlessness in this context.[5] In authorizing state appellate courts to either reweigh the aggravating and mitigating circumstances or to engage in a constitutional harmless error analysis, the Court has in no way forbidden federal habeas courts from engaging in their usual constitutional harmless error analysis.

In prior cases, the Supreme Court itself has applied harmless error analysis "in the first instance," although its usual practice is to reverse and remand for a determination of harmlessness. *Yates v. Evatt*, 500 U.S. 391, 407, 111 S.Ct. 1884, 1895, 114 L.Ed.2d 432 (1991) (citing *Rose v. Clark*, 478 U.S. 570, 584, 106 S.Ct. 3101, 3109, 92 L.Ed.2d 460 (1986)). In *Rose*, the Court remanded a section 2254 habeas case to allow the federal court of appeals to determine harmless error under *Chapman* in the first instance. 478 U.S. at 584. We not only have the authority to consider constitutional harmlessness in the first instance, but we have the responsibility to do so and to grant the writ only after examining the entire record to determine that the constitutional error was not harmless. *See Rose*, 478 U.S. at 576, 106 S.Ct. at 3105. Absent any Supreme Court authority to the contrary (and we see no contrary principle arising from the *Clemons* line of cases cited above), we believe that we are authorized to engage in constitutional harmless error analysis in the first instance when a state sentencer has considered an unconstitutionally vague portion of an aggravating circumstance.

The Fourth Circuit sitting en banc recently decided, in an alternate holding, that federal courts considering a habeas corpus petition pursuant to 28 U.S.C. § 2254 *must* review constitutional errors of the state trial and sentencing proceedings for harmlessness, even error resulting from the sentenc-er's consideration of an invalid aggravating factor. *See Smith*, 14 F.3d at 975 (alternate holding; court first concluded that the issue was procedurally barred). The Fourth Circuit in *Smith* squarely confronted a situation where the state appellate court had neither reweighed the aggravating and mitigating factors absent the vague factor nor applied a harmless error analysis. 14 F.3d at 974. The *Smith* opinion provides a very thorough analysis of this issue and it is consistent with the reasoning we outlined above. *See id.* at 974–79. We agree with the Fourth Circuit's conclusion that federal courts of appeals "are adequately equipped to conduct [the harmless error analysis]" in the first instance. *Id.* at 979.

We also agree with the Fourth Circuit's analysis of the role that concepts of comity and federalism play in determining whether or not we are authorized to conduct a harmless error analysis in this case.

As stressed in *Brecht* [*v. Abrahamson*, —— U.S. ——, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993) ], " 'Federal intrusions into state criminal trials frustrate both the States' sovereign power to punish offenders and their good-faith attempts to honor constitutional rights.' " *Brecht*, [——] U.S. at [——], 113 S.Ct. at 1720 (quoting *Engle v. Isaac*, 456 U.S. 107, 128, 102 S.Ct. 1558, 1572, 71 L.Ed.2d 783 (1982)). Thus, before overturning final and presumptively correct state convictions or sentences on habeas review, federal courts must assess for harmlessness those errors that are eligible for this review in order to assure that the extraordinary relief provided by the writ is granted only to those " 'persons whom society has grievously wronged.' " *Brecht*, [——] U.S. at [——], 113 S.Ct. at 1719 (quoting *Fay v. Noia*, 372 U.S. 391, 441, 83 S.Ct. 822, 850, 9 L.Ed.2d 837 (1963)). *Id.* at 976.

We disagree with the *Smith* court only to the extent that it failed to employ the *Chap-*

---

5. The Supreme Court cases thus far have arisen either in the context of a direct appeal from a state appellate court where the Court naturally is explaining what avenues of analysis are available to the *state* appellate courts, *see Clemons*, 494 U.S. at 741, 110 S.Ct. at 1444; *Sochor*, —— U.S. at ——, 112 S.Ct. at 2117; or in the context of a habeas action where harmlessness was not at issue, *see Stringer*, —— U.S. at ——, 112 S.Ct. at 1140 (at issue was whether a federal habeas petitioner sentenced before *Clemons* could rely on the principle set forth therein); *Richmond*, —— U.S. at ——, 113 S.Ct. at 535 (respondent did not claim that the error was harmless; only the reweighing process was at issue).

*man* harmless error standard which requires that constitutional error must be harmless beyond a reasonable doubt. The Supreme Court in *Clemons* authorized state appellate courts to engage in a *Chapman* harmless error analysis. We acknowledge that this standard is usually applied in direct appeals. *See Starr*, 23 F.3d at 1292. In federal habeas review, this circuit generally applies the less onerous *Brecht* standard, applied by the Fourth Circuit in *Smith*, which considers whether the error "had substantial or injurious effect or influence in determining the jury's verdict." *Brecht*, —— U.S. at ——, 113 S.Ct. at 1722 (quoting *Kotteakos v. United States*, 328 U.S. 750, 776, 66 S.Ct. 1239, 1253, 90 L.Ed. 1557 (1946)). *See also Starr*, 23 F.3d at 1292. However, in a federal habeas review where the state trial or appellate court found no constitutional error and thus had no reason to consider harmlessness, we apply the *Chapman* analysis to determine if the constitutional error that we have identified requires habeas relief. *See Starr*, 23 F.3d at 1292. This is precisely the posture of the case before us; the state court found no constitutional error and therefore never had occasion to apply the *Chapman* standard. Consequently, we apply the *Chapman* harmless error standard in the first instance and consider whether the constitutional error in this case is harmless beyond a reasonable doubt.

■ To determine whether constitutional error is harmless beyond a reasonable doubt, we review the record de novo. *Arizona v. Fulminante*, 499 U.S. 279, 295, 111 S.Ct. 1246, 1257, 113 L.Ed.2d 302 (1991). " 'The question is whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction.' " *DeVine v. Solem*, 815 F.2d 1205, 1208 (8th Cir.1987) (quoting *Chapman*, 386 U.S. at 23, 87 S.Ct. at 827). We recognize the heavy burden the state bears in proving that a constitutional error is harmless beyond a reasonable doubt. *See id.* "A finding that the evidence is sufficient to support the conviction [in this case, to support the decision to impose the death penalty] is not dispositive

of the question of harmless error." *Id.; see also Yates*, 500 U.S. at 404, 111 S.Ct. at 1893. Rather, the issue under *Chapman* is whether the sentencer actually rested its decision to impose the death penalty on the valid evidence and the constitutional aggravating factors, independently of the vague factor considered; in other words, whether what was actually and properly considered in the decision-making process was "so overwhelming" that the decision would have been the same even absent the invalid factor. *See Yates*, 500 U.S. at 404–05, 111 S.Ct. at 1893–94 (discussing an erroneous presumption given in jury instructions).

■ In this case, the sentencing panel actually considered and made some findings implicating the unconstitutionally vague phrase of aggravating circumstance (1)(d). We conclude, however, that the remaining appropriate and valid considerations are so overwhelming that it is beyond a reasonable doubt that the sentencing decision would have been the same, even absent consideration of the invalid phrase of aggravating circumstance (1)(d).

The record supports the sentencing panel's finding that Williams sexually abused Catherine Brooks. The evidence revealed that spermatozoa was found in Catherine Brooks's vagina and rectal tract, and the jury convicted Williams of first-degree sexual assault. The sexual abuse finding is a constitutionally objective factor that independently supported the sentencing panel's use and consideration of aggravating circumstance (1)(d). Even absent consideration of the unconstitutionally vague "exceptional depravity" phrase, the sentencing panel still would have had four constitutionally valid aggravating circumstances to consider in the balance, including aggravating circumstance (1)(d). To the contrary, in *Moore* (and in Williams's death sentence for the murder of Patricia McGarry), the sentencing panel's findings under aggravating circumstance (1)(d) implicated only the unconstitutionally vague second phrase. 904 F.2d at 1229. In that situation, absent consideration of the invalid

phrase, aggravating circumstance (1)(d) was not established and the balance of aggravating circumstances was clearly altered. In considering the death sentence for the murder of Catherine Brooks, the sentencing panel did no more than make findings that independently supported both the constitutional and the unconstitutional portions of one aggravating circumstance. There is full and ample factual support for the panel's conclusion that Williams's conduct was aggravated because his sexual abuse of Catherine Brooks made his crime of murder "especially heinous, atrocious, cruel." The sentencing panel did not explicitly rely more heavily on the unconstitutional "exceptional depravity" phrase than on the constitutional phrase. Thus, we note initially that the error in this case is not as egregious as error where the sentencer considers an aggravating circumstance that would not otherwise have been established or not considered at all, or that was based upon false or inaccurate evidence. *See Johnson v. Mississippi*, 486 U.S. 578, 590, 108 S.Ct. 1981, 1988, 100 L.Ed.2d 575 (1988).

The sentencing panel considered three other valid aggravating factors in addition to aggravating circumstance (1)(d). Aggravating circumstance (1)(a) included findings that Williams has a history of violent behavior. In 1964, Williams was convicted of third-degree robbery which included a threat of violence to the victim. Also, as recently as six days before the murders of Catherine Brooks and Patricia McGarry, Williams kidnapped and assaulted his ex-wife. Williams took his ex-wife to a park in Lincoln, Nebraska, "where, after slashing [her] head with a knife and threatening to 'ram' the knife in her ear, Williams 'raped' [her]." *Williams,*

396 N.W.2d at 117. He was released from custody on August 10, the day before Patricia McGarry and Catherine Brooks were murdered.

Under aggravating circumstance (1)(b), the sentencing panel found that Williams murdered Catherine Brooks in an apparent attempt to conceal his identity. Aggravating circumstance (1)(e), also found by the panel to be present, allowed the sentencing panel to consider the fact that both murders occurred at about the same time. When the Supreme Court of Nebraska considered the proportionality of Williams's sentence in 1979, it noted that this was the only case then pending that involved multiple first-degree murders. *See Williams,* 287 N.W.2d at 29.

We recognize that "[t]here is no arithmetical computation or formula required in a court's consideration of aggravating and mitigating circumstances under § 29–2523." *State v. Palmer,* 224 Neb. 282, 399 N.W.2d 706, 729 (1986). The weighing process in Nebraska is not a mere counting up of aggravating factors but requires a careful examination and weighing of the factors given the totality of the circumstances. *Reeves,* 476 N.W.2d at 838; *Stewart,* 250 N.W.2d at 862–63. Nevertheless, the overwhelming force of the evidence properly considered and relied upon by the sentencing panel in this case convinces us beyond a reasonable doubt that the sentencing panel's improper inclusion of the unconstitutionally vague phrase of aggravating circumstance (1)(d) did not alter the balance.[6] We are convinced beyond a reasonable doubt that Williams's sentence would have been the same even absent the constitutional error.

## IV.

■ Williams also contends that the district court erred in not holding an evidentia-

---

**6.** Williams contends that the Supreme Court of Nebraska relied heavily upon the unconstitutional "exceptional depravity" phrase, thus preventing a finding of constitutional harmlessness. We disagree. The state supreme court, in performing its proportionality review, concluded that "[i]f sufficient aggravating circumstances existed in those cases to justify the imposition of the death penalty, then the merciless, callous murder of two defenseless women in this case provided ample justification for the death penalty here."

*Williams,* 287 N.W.2d at 30. Williams, however, takes this statement out of context. The court was performing a proportionality review. The proportionality review is not identical to a reweighing of the aggravating and mitigating factors, which the court did not engage in. We look to what the sentencing panel actually relied upon in performing our harmless error review. We noted, *supra,* that Williams failed to raise his proportionality claim in any prior proceeding.

ry hearing to allow him to demonstrate that his confession was illegally obtained. He contends that an evidentiary hearing is required in order for the district court to engage in an independent determination of the voluntariness of his confession. We disagree.

When a habeas petitioner challenges the voluntariness of his confession, the district court must conduct an independent review to determine whether the confession was voluntary, giving substantial deference to the state court's determination of the facts. *See Miller v. Fenton,* 474 U.S. 104, 117, 106 S.Ct. 445, 453, 88 L.Ed.2d 405 (1985) ("state-court findings on such matters are conclusive on the habeas court if fairly supported in the record"); *Woods v. Armontrout,* 787 F.2d 310, 313 (8th Cir.1985), *cert. denied,* 479 U.S. 1036, 107 S.Ct. 890, 93 L.Ed.2d 842 (1987). *See also* 28 U.S.C. § 2254(d) (facts determined by state court are entitled to a presumption of correctness). A habeas corpus petitioner is entitled to an evidentiary hearing on the allegations contained in the petition if:

> (1) the merits of the factual dispute were not resolved in the state hearing; (2) the state factual determination is not fairly supported by the record as a whole; (3) the fact-finding procedure employed by the state court was not adequate to afford a full and fair hearing; (4) there is a substantial allegation of newly discovered evidence; (5) the material facts were not adequately developed at the statecourt [sic] hearing; or (6) for any reason it appears that the state trier of fact did not afford the habeas applicant a full and fair fact hearing.

*Warden v. Wyrick,* 770 F.2d 112, 117 (8th Cir.1985). When the facts have not been sufficiently developed in the state court, a petitioner "is entitled to an evidentiary hearing to introduce additional evidence [only] 'if he can show cause for his failure to develop the facts in state-court proceedings and actual prejudice resulting from that failure.'" *Stewart v. Nix,* 31 F.3d 741, 743 (8th Cir. 1994) (quoting *Keeney v. Tamayo–Reyes,* —— U.S. ——, ——, 112 S.Ct. 1715, 1721, 118 L.Ed.2d 318 (1992)).

Williams asserts that he was entitled to an evidentiary hearing because his original pro se petition alleged facts supporting his contention that his confession was coerced. Williams's original pro se petition included a statement of his version of the facts surrounding the interrogation. Williams contends that this statement demonstrates coercion and that it was overlooked by the magistrate judge and the district court. The statement to which Williams refers, in our view, indicates nothing more than that Williams disagrees with the state court's findings of fact. Williams alleges no substantial newly discovered evidence and no issue that the state court left unresolved. He does not contend that he did not have an opportunity to fully develop the record before the trial court, and he does not complain that the trial court procedures deprived him of a full and fair hearing. Williams's pro se statement of his version of the facts does not present grounds for requiring an evidentiary hearing in the district court.

Williams also asserts that he was entitled to an evidentiary hearing because the state court did not specifically make a finding on whether or not he requested counsel. Williams's amended petition requested an evidentiary hearing "to demonstrate that Petitioner requested to consult an attorney prior to any questioning but was denied his right to consult an attorney." (Appellant's App. at 31.) This statement does not make a sufficient showing to entitle Williams to an evidentiary hearing on any of the grounds listed above. Contrary to Williams's assertion, the state court was not required to make a specific finding that he did or did not request counsel prior to questioning as long as the conclusion that the confession was voluntary is in the record "with unmistakable clarity." *Sims v. Georgia,* 385 U.S. 538, 544, 87 S.Ct. 639, 643, 17 L.Ed.2d 593 (1967).

The state court found with unmistakable clarity that Williams's confession was given voluntarily. The state supreme court af-

firmed this finding as supported by the record, crediting the testimony of two officers who testified that they read Williams his *Miranda* rights before he gave the confession and that Williams did not request a lawyer. *Williams,* 287 N.W.2d at 26. We conclude that "implicit in the trial court's determination that [Williams] made his confession voluntarily is a finding that the police officers did not induce the confession by either coercion or promises," *Woods,* 787 F.2d at 315, and that Williams did not request an attorney prior to questioning. Accordingly, we conclude that the district court did not err by refusing to hold an evidentiary hearing.

### V.

■■■ Williams contends that his three-judge sentencing panel improperly used the presentence report prepared for his case, that the federal district court erred by failing to sua sponte expand the record to include the presentence report,[7] and that the question of whether aggravating factor (1)(a)[8] applies cannot be properly resolved without the presentence report. This contention is without merit. Williams contends that he has raised "serious constitutional issues" regarding the use of the presentence report, (Appellant's Br. at 24), but his brief fails to articulate any constitutional violation resulting from the sentencing panel's use of or reliance on the presentence report. Absent a federal constitutional violation, a federal habeas petitioner is not entitled to relief. *See Mabry v. Johnson,* 467 U.S. 504, 507, 104 S.Ct. 2543, 2546, 81 L.Ed.2d 437 (1984).

We have, however, carefully reviewed the magistrate judge's report and recommendation concerning the appellant's contentions that the use of his presentence report by the sentencing panel violated his "right to confront witnesses, right to be represented by counsel, and right against self-incrimination as guaranteed by the Fifth, Sixth, and Fourteenth Amendments." (Appellant's Addend. at A10.) The district court adopted the magistrate judge's report without elaboration except to note, as we have concerning this portion of the appeal itself, that the appellant offered no authorities to the magistrate judge on the alleged issues and offered no authorities to the district court. Nevertheless, the magistrate judge surveyed the law with respect to whether the constitutional right of confrontation attaches at a sentencing hearing, reviewed carefully the state court record which shows that the appellant and his counsel had adequate access to the presentence report; that the appellant's counsel objected to any use of the presentence report in general and to portions of the presentence report in particular, and concluded that the appellant had failed to show how the sentencing panel had failed to provide him with an adequate opportunity to contest and rebut the information contained in the report. The magistrate judge also concluded that the appellant had made no showing that any information relied upon by the sentencing panel was false or could have been shown to be false by the cross-examination of witnesses. The district court committed no error in adopting the magistrate judge's recommendation that this claim should provide no habeas relief to the appellant.

### VI.

In conclusion, we affirm the judgment of the district court denying Williams a writ of habeas corpus with regard to the death sentence imposed upon him for murdering Catherine Brooks.

---

7. Williams himself made no offer of his presentence report.

8. Aggravating factor (1)(a) provides as follows: "The offender was previously convicted of ... a crime involving the use or threat of violence to the person, or has a substantial history of serious assaultive or terrorizing criminal activity." Neb. Rev.Stat. 29–2523(1)(a). The sentencing panel found that Williams had been convicted of a felony of third degree robbery involving the threat of violence, in New York in 1964; and that the defendant has a substantial history of serious assaultive criminal activity evidenced less than a week before the commission of the murders and sexual assault in this case.

FLOYD R. GIBSON, Senior Circuit Judge, concurring.

I concur in the result reached by the majority. However, I write separately because I continue to question whether the phrase "exceptional depravity by ordinary standards of morality and intelligence," Neb.Rev.Stat. § 29–2523(1)(d) (Reissue 1985), is unconstitutionally vague. *Moore v. Clarke*, 904 F.2d 1226 (8th Cir.1990) (Gibson, Floyd R., dissenting), *reh'g denied*, 951 F.2d 895 (1991), *cert. denied*, — U.S. —, 112 S.Ct. 1995, 118 L.Ed.2d 591 (1992).

Prior to the *Moore* decision, the Nebraska Supreme Court had defined "exceptional depravity" on several occasions as "so coldly calculated as to indicate a state of mind totally and senselessly bereft of regard for human life." *State v. Rust*, 197 Neb. 528, 250 N.W.2d 867, 874, *cert. denied*, 434 U.S. 912, 98 S.Ct. 313, 54 L.Ed.2d 198 (1977); *see State v. Stewart*, 197 Neb. 497, 250 N.W.2d 849, 864 (1977), *cert. denied*, — U.S. —, 114 S.Ct. 97, 126 L.Ed.2d 64 (1993); *State v. Holtan*, 197 Neb. 544, 250 N.W.2d 876, 880, *cert. denied*, 434 U.S. 912, 98 S.Ct. 313, 54 L.Ed.2d 198 (1977). The Nebraska Supreme Court also acknowledged that "[i]t might be argued that every murder involves depravity. The use of the word 'exceptional,' however, confines it only to those situations where depravity is apparent to such an extent as to obviously offend all standards of morality and intelligence." *State v. Simants*, 197 Neb. 549, 250 N.W.2d 881, 891, *cert. denied*, 434 U.S. 878, 98 S.Ct. 231, 54 L.Ed.2d 158 (1977). In my opinion, these explanations provide sufficient guidance to the sentencing body considering the death penalty and serve to "eliminat[e] total arbitrariness and capriciousness in its imposition." *Proffitt v. Florida*, 428 U.S. 242, 258, 96 S.Ct. 2960, 2969, 49 L.Ed.2d 913 (1976).

As noted, the Nebraska Supreme Court interpreted the phrase "exceptional depravity" as applying "only to those situations where depravity is apparent to such an extent as to obviously offend all standards of morality and intelligence." *Simants*, 250 N.W.2d at 891. If the uncalled-for, premeditated, brutal killings of the two unresisting young women[9] in this case do not "obviously offend all standards of morality and intelligence," then I do not know what would or what more would be necessary.

I do not think it within the province of the federal courts to be creating escape-hatches for vicious criminals by using semantics to mask the actual, raw facts—in this case, the taking of two innocent lives to satisfy a murderer's sexual cravings and his desire to eliminate possible witnesses. These atrocious acts certainly exhibit "exceptional depravity" in the true sense and meaning of those words. The argument that the sexual assault might have occurred upon a dead young woman instead of when this young woman was unconscious or badly beaten in the throes of death should not be considered as an excuse for this despicable conduct. Williams' total and senseless disregard for human life is apparent; we should not have to deal with the semantic, convoluted arguments such as those made by the defendant in this case. These arguments serve to denigrate the law and give a hollow meaning to the term "justice."

To my mind, the brutal killings that Williams committed exhibit exceptional depravity by any fair meaning of those words, and the Nebraska sentencing panel committed no error in this case. I would agree, however, that if Williams' claim of error is recognized, then it is harmless beyond a reasonable doubt. Williams' heinous and depraved criminal acts call for the imposition of the supreme penalty.

9. Although the State did not appeal the district court's granting of the writ of habeas corpus for the murder of Patricia McGarry, I believe that both of these murders demonstrate heinousness and exceptional depravity and warrant the imposition of the death penalty.