99 F.3d 1146
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Joseph W. McBRIDE, Petitioner-Appellant,
v.
Manfred F. MAASS, Superintendent, Oregon State Penitentiary,
Respondent-Appellee.
 No. 95-35744.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted July 10, 1996.
Decided Oct. 21, 1996.
 
 1
 Before: GOODWIN and BRUNETTI, Circuit Judges and KING*, District Judge.
 
 
 2
 MEMORANDUM**
 
 
 3
 McBride, an Oregon state prisoner serving life for murder, brings this second appeal from district court judgments denying him habeas corpus relief. He has asserted a number of federal constitutional deficiencies in his state court conviction. His first appeal succeeded on the basis that McBride had not procedurally defaulted in his state court post conviction proceedings. This appeal challenges the district court judgment on its merits. We affirm on the ground that any improper comment by the prosecutor during final argument was harmless.
 
 
 4
 In 1986, McBride and his girlfriend, Sharon Bowling, met some fellow transients at the bus station in Eugene and went to a party at Joseph Roberts' apartment. Eventually all the guests left except McBride and Bowling.
 
 
 5
 McBride and Bowling left the following morning and eventually moved on to Portland. Roberts' body was found on December 1, stuffed in an alcove of the apartment. The apartment was very warm and the date of death could not be determined. McBride and Bowling were located in Portland on December 5. McBride was handcuffed, put in a patrol car and taken to the Multnomah County Justice Center. McBride was clearly in custody, was a focal suspect, and was questioned by the Portland police. It is undisputed that he asked for a lawyer, none was provided, and he was eventually released from custody.
 
 
 6
 This background would be unremarkable except that eight months after McBride was released by the Portland police, McBride walked into a bar in Minneapolis and asked the bartender to call the police because he wanted to confess to a murder committed in Eugene, Oregon. When police arrived he asked them to find Bowling before he confessed. McBride and Bowling had separated, and he was apparently attempting to get her away from two other transients who, he thought, had been keeping McBride away from her. The officers were unable to find Bowling immediately. They read McBride his Miranda rights and arrested him. McBride then confessed that Bowling had stabbed Roberts with a dull knife and that he had ripped out Roberts' windpipe.
 
 
 7
 During the Oregon trial, McBride's lawyer brought up the Portland interrogation in cross examination of a Eugene police officer who had been present during the Portland questioning. Apparently counsel thought he could use McBride's reaction to the questioning to bolster McBride's theory that he had fabricated his confession of the murder to Minneapolis officers in an effort to get the officers to help him establish contact with Bowling.
 
 
 8
 The prosecutor then brought out the full conversation which had occurred in the Portland holding cell, including McBride's statement that he would not say anything else until he got a lawyer. The prosecutor couldn't leave that point alone, and in closing argument brought it up again and said to the jury: "... there is a guilty man accused of a crime protecting himself ..."
 
 
 9
 A good deal of lawyer energy has been expended by the state trying to avoid the consequences of that surprising remark before the jury, calling it perfectly proper advocacy, but if error, invited error. McBride, on the other hand calls it prosecutorial misconduct of the most reprehensible character. On the whole record, particularly in light of McBride's confession to Minnesota officers, which was before the jury, it is difficult to see how the prosecutor's blunder prejudiced McBride's defense in any significant degree.
 
 
 10
 The Fifth Amendment gives McBride the right to remain silent. McBride's request for counsel is treated as silence. Wainwright v. Greenfield, 474 U.S. 284, 295 (1986) (silence includes the statement or a desire to remain silent until an attorney has been consulted).
 
 
 11
 The state trial court had ruled that McBride waived any 5th Amendment protection by his lawyer's questioning of the Eugene police officer on cross examination. We need not decide in this appeal whether McBride can elicit part of a conversation and then seek to block the introduction of the whole conversation. McBride's lawyer did open up the details of the interrogation, specifically asking the officer what was said, and therefore invited the prosecutor to introduce the entire conversation.
 
 
 12
 On his own closing, McBride's lawyer mentioned the Portland interrogation to explain why McBride would think the police would be interested in talking to him in Minnesota. The lawyer said McBride "knew it would generate this kind of interest. He had been worked on by the police officers in Portland to such an extent that he broke down and cried."
 
 
 13
 The prosecutor then said, referring to the Portland interrogation in rebuttal closing:
 
 
 14
 It's not like, the conduct is not like an innocent man accused of a crime and he weeps at the accusation. The context is that there is a guilty man accused of a crime protecting himself and perhaps a feeling of, feelings of remorse....
 
 
 15
 The district court concluded that, "While the prosecutor may have chosen his words more carefully ... I cannot find the prosecutor's actions to be a violation of petitioner's rights."
 
 
 16
 The statement clearly was used to imply guilt. The prosecutor made an express statement that McBride's request for an attorney was because he needed to protect himself because he was guilty. The Fifth Amendment "forbids ... comment by the prosecutor on the accused's silence ..." Griffin v. California, 380 U.S. 609, 615 (1965). We hold, however, that on this unusual record, the comment was harmless error.
 
 
 17
 In evaluating harmless error, the court looks at three things: 1) extent of the comments made, 2) whether an inference of guilt from silence was stressed to the jury, and 3) the extent of other evidence suggesting guilt. U.S. v. Kallin, 50 F.3d 689, 693 (9th Cir.1995). There is in this case an additional element of the invitational aspects of the error.
 
 
 18
 The standard of proof required for harmless error usually depends on whether the challenge is direct or on habeas review. Chapman requires the state to prove the error was harmless beyond a reasonable doubt on direct review. Chapman v. California, 386 U.S. 18 (1967). In a habeas petition, Brecht requires that error must have "had substantial and injurious effect or influence in determining the jury's verdict." Brecht v. Abrahamson, 507 S.Ct. 619 (1993) (quoting Kotteakos, 328 U.S. 750 (1946)). Under this test McBride must show the trial error resulted in "actual prejudice." Id. at 637. The district court applied the Brecht standard.
 
 
 19
 McBride argues that although this is a habeas case he is entitled to the Chapman standard because the state court never performed a harmless error analysis. The Eight Circuit has adopted this rule. Williams v. Clarke, 40 F.3d 1529, 1540-41, cert. denied, 115 S.Ct. 1397; Starr v. Lockhart, 23 F.3d 1280, 1291-92 (8th Cir.), cert. denied, 115 S.Ct. 499 (1994); Orndorff v. Lockhart, 998 F.2d 1426, 1430 (8th Cir.1993), cert. denied, 114 S.Ct. 1631 (1994).
 
 
 20
 The 11th Circuit has decided, over dissent, not to follow the Eighth Circuit. Horsley v. State of Ala., 45 F.3d 1486 (11th Cir.1995); Smith v. Singletary, 61 F.3d 815, 818 fn. 2 (11th Cir.1995). We need not resolve that conflict in this case.
 
 
 21
 There was ample evidence to support McBride's conviction. There was testimony by Charles Bernbeck, another indigent man, admittedly an alcoholic, who was at Roberts' apartment at the party where McBride and Bowling and Roberts were last seen together. McBride and Bowling were arrested in Portland with several of the possessions of Roberts, including hat, vest, shoes, watch, radio and key chain. McBride subsequently confessed to killing Roberts. Bowling testified she left the apartment and returned to find McBride covered in blood and that he told her he killed Roberts. There was a footprint in blood in the apartment that matched Bowling's shoe.
 
 
 22
 McBride's innocence or guilt is not at issue, but whether the improper statement of the prosecutor had an effect on the jury's verdict. The prosecutor's statement that McBride was a guilty man trying to protect himself, in the context of all of the evidence presented to the jury, was harmless under either Brecht or Chapman. Cf. Hanna v. Riveland, 1996 WL 343672 (9th Cir. June 25, 1996) (jury instruction not harmless error under either standard).
 
 
 23
 AFFIRMED.
 
 
 
 *
 Honorable Samuel P. King, Senior United States District Judge for the District of Hawaii, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3