**Carey Dean MOORE, Appellee,**

v.

**Harold W. CLARKE, Appellant.**

**Carey Dean MOORE, Appellant,**

v.

**Harold W. CLARKE, Appellee.**

No. 88–2584.

United States Court of Appeals,
Eighth Circuit.

Submitted July 30, 1990.

Decided Dec. 12, 1991.

William L. Howland, Lincoln, Neb., for appellant.

Alan E. Peterson, Lincoln, Neb., for appellee.

Before JOHN R. GIBSON, Circuit Judge, FLOYD R. GIBSON, Senior Circuit Judge, and WOLLMAN, Circuit Judge.

ON PETITION FOR REHEARING

JOHN R. GIBSON, Circuit Judge.

In *Moore v. Clarke*, 904 F.2d 1226 (8th

---

**3.** The district court was very patient in giving Casey all of the time necessary to explain his position.

Cir.1990), we affirmed the district court's[1] grant of a writ of habeas corpus to Carey Dean Moore on the grounds that the statute under which he was sentenced was unconstitutionally vague as written and as construed by the Nebraska Supreme Court. The Warden of the Nebraska State Penitentiary filed a petition for rehearing, and while his petition was pending before this court, the United States Supreme Court issued two decisions dealing with an Arizona statute similar to the Nebraska statute under which Moore was sentenced. In *Walton v. Arizona,* —— U.S. ——, 110 S.Ct. 3047, 111 L.Ed.2d 511 (1990), and *Lewis v. Jeffers,* —— U.S. ——, 110 S.Ct. 3092, 111 L.Ed.2d 606 (1990), the Supreme Court considered the adequacy of a statute designating as an "aggravating circumstance" a situation in which a murder was committed "in an especially heinous, cruel or depraved manner." We asked the parties for additional briefing on these two cases. As we are satisfied that our earlier opinion is consistent with *Walton* and *Jeffers,* we deny the Warden's petition for rehearing.

We first observe that *Jeffers* reasserts the requirement that a state " 'channel the sentencer's discretion by "clear and objective standards" that provide "specific and detailed guidance," and that "make rationally reviewable the process for imposing a sentence of death." ' " *Jeffers,* 110 S.Ct. at 3099 (quoting *Godfrey v. Georgia,* 446 U.S. 420, 428, 100 S.Ct. 1759, 1765, 64 L.Ed.2d 398 (1980)). *Walton* defines our procedure in such cases as follows:

> When a federal court is asked to review a state court's application of an individual statutory aggravating or mitigating circumstance in a particular case, it must first determine whether the statutory language defining the circumstance is itself too vague to provide any guidance to the sentencer. If so, then the federal court must attempt to determine whether the state courts have further defined the vague terms and if they have done so, whether those definitions are constitutionally sufficient, *i.e.,*

whether they provide *some* guidance to the sentencer. In this case there is no serious argument that Arizona's "especially heinous, cruel or depraved" aggravating factor is not facially vague. But the Arizona Supreme Court has sought to give substance to the operative terms, and we find that its construction meets constitutional requirements.

110 S.Ct. at 3057 (emphasis in original).

Our original opinion followed precisely this formula, examining first the question of whether the Nebraska statute's language was too vague to provide guidance to the sentencer, and then determining whether the Nebraska courts had narrowed the statutory language by construction. Our study of the Nebraska decisional law focused first on the decisions of the Nebraska Supreme Court as they existed at the time of Moore's sentencing, and then on the changes brought about by *State v. Palmer,* 224 Neb. 282, 399 N.W.2d 706 (1986), *cert. denied,* 484 U.S. 872, 108 S.Ct. 206, 98 L.Ed.2d 157 (1987), decided some six years later. 904 F.2d at 1228–33.

The relevant language in the Arizona statute in *Walton* and *Jeffers* referred to murder committed in "an especially heinous, cruel or depraved manner," Ariz.Rev. Stat.Ann. § 13–703(F)(6) (Supp.1988). This is quite similar to the Nebraska statute in this case, which provided it would be an aggravating circumstance if the "murder [were] especially heinous, atrocious, cruel, or manifested exceptional depravity by ordinary standards of morality and intelligence." Neb.Rev.Stat. § 29–2523(1)(d) (Reissue 1985). However, the Arizona Supreme Court had narrowed the meaning of the words "especially ... depraved manner" in the Arizona statute by defining the phrase to signify that "the perpetrator 'relishe[d] the murder, evidencing debasement or perversion,' or 'show[ed] an indifference to the suffering of the victim and evidence[d] a sense of pleasure' in the killing." 110 S.Ct. at 3058 (quoting *State v. Walton,*

---

**1.** The Honorable Warren K. Urbom, United States District Judge for the District of Nebraska.

159 Ariz. 571, 587, 769 P.2d 1017, 1033 (1989)).

No such narrowing construction was given the Nebraska statute's "depravity" language, either by the sentencing court or the Nebraska Supreme Court in its affirmance of Moore's sentence. The Nebraska Supreme Court's decision in *Palmer* (handed down some six years after the sentencing and four years after the Nebraska Supreme Court decision in this case), attempted to make the statutory provision more specific, *see* 224 Neb. at 320, 399 N.W.2d at 731–32, but neither the sentencing panel nor the Nebraska Supreme Court applied the narrowed construction in this case.

In *Jeffers*, the Arizona Supreme Court applied the "especially heinous ... or depraved" language as narrowed in its disposition of the *Walton* case. The United States Supreme Court rejected Jeffers' argument that the aggravating circumstance was vague as applied, and went on to hold that the Ninth Circuit erred in conducting a de novo, case-by-case comparison of the facts of *Jeffers* with those of other cases. 110 S.Ct. at 3102. The Supreme Court defined the issue in *Jeffers* as "solely whether a state court has properly found the existence of a constitutionally narrowed aggravating circumstance." *Id.* Thus, the issue presented in *Jeffers* does not arise until after there has been application of a constitutionally adequate aggravating circumstance, which did not exist in this case.

The significant issue in this case, as we discussed in our original opinion, 904 F.2d at 1228–33, is whether the Nebraska Supreme Court's definition of "exceptional depravity" was unconstitutionally vague. The standard applied to Moore in 1980 was modified substantially six years later by *Palmer*, and the changes found desirable by the Nebraska Supreme Court in *Palmer* then demonstrate that the standards applied to Moore were vague.

As the district court pointed out, *Moore v. Clarke*, CV84–L–754, slip op. at 4 (D.Neb. Sept. 20, 1988), *Palmer* makes no mention of the "so coldly calculated" language, which it referred to as emotionless

planning, which was what the sentencing panel relied on in finding this aggravating circumstance in Moore's case. Indeed, we are convinced that *Palmer*, in setting out a different test, points out the vagueness of the statutory language as applied in Moore's sentencing.

Both *Walton* and *Jeffers* discussed the Arizona "heinous, cruel or depraved" language which had been narrowed by construction in *State v. Gretzler*, 135 Ariz. 42, 659 P.2d 1 (en banc), *cert. denied*, 461 U.S. 971, 103 S.Ct. 2444, 77 L.Ed.2d 1327 (1983), and the Court sustained application of that language as applied to both Walton and Jeffers. 110 S.Ct. at 3058, 110 S.Ct. at 3104. We discussed *Gretzler* in our original opinion. 904 F.2d at 1232 n. 6. The Supreme Court's imprimatur on a portion of the *Gretzler* test does not validate Moore's sentencing, since the Nebraska Supreme Court did not adopt *Gretzler*-like language until six years after Moore's sentencing.

*Walton* also underscores our holding that because a three-judge panel sentenced Moore, any remand will require consideration of *Clemons v. Mississippi*, 494 U.S. 738, 110 S.Ct. 1441, 108 L.Ed.2d 725 (1990). *Walton*, 110 S.Ct. at 3057. This review under *Clemons* could involve the reweighing of the valid aggravating circumstances against the mitigating circumstances, which were not attacked on this appeal.

*Walton* rejected a claim that the heinous, cruel or depraved factor had been applied in an arbitrary manner, with the state courts failing to distinguish Walton's case from those in which the death sentence had not been imposed—in effect, challenging the Arizona Supreme Court's proportionality review. 110 S.Ct. at 3058. Language in Part 1.D. of our original opinion referring to the need for standards making it possible to distinguish a case in which the death penalty was proper from those in which it was not, 904 F.2d at 1233, must not be read as referring to the need for proportionality review, but rather to the need for concrete and meaningful definitions of the aggravating circumstances. The proportionality review of Moore's case was not an issue in

the appeal before us. Our discussion simply recognized that an examination of the totality of the circumstances surrounding the murder does not cure the lack of objective standards. It is evident that our earlier opinion did not compare Moore's sentence to that of any other murderers.

As we conclude that our opinion is not in conflict with the decisions of the United States Supreme Court issued while the Motion for a Rehearing with Suggestion for Rehearing En Banc was pending, the motion for rehearing is denied.

FLOYD R. GIBSON, Senior Circuit Judge, dissenting from the denial of rehearing.

I respectfully dissent from the panel's decision to deny rehearing in this case. The Supreme Court's decision in *Walton* reinforces my beliefs as expressed in my dissenting opinion in this case. *See Moore,* 904 F.2d at 1234–36 (F. Gibson, Sr. J., dissenting).

I find *Walton* supportive of my earlier view that the Nebraska Supreme Court has provided sufficient guidance to prevent the arbitrary imposition of the death penalty. *See Moore,* 904 F.2d at 1234–35 (F. Gibson, Sr. J., dissenting) (citing cases). In *Walton,* the Court approved the Arizona Supreme Court's "statement that a crime is committed in an especially 'depraved' manner when the perpetrator 'relishes the murder, evidencing debasement or perversion,' or 'shows an indifference to the suffering of the victim and evidences a sense of pleasure' in the killing." *Walton,* 110 S.Ct. at 3058 (quoting *State v. Walton,* 159 Ariz. 571, 587, 769 P.2d 1017, 1033 (1989)). The Court also expressed its continuing adherence to *Proffitt v. Florida,* 428 U.S. 242, 96 S.Ct. 2960, 49 L.Ed.2d 913 (1976), *see Walton,* 110 S.Ct. at 3058, wherein a plurality of the Court approved Florida's judicial definition of an " 'especially heinous, atrocious or cruel' " crime as a " 'conscienceless or pitiless crime which is unnecessarily torturous to the victim.' " *Proffitt,* 428 U.S. at 255–56, 96 S.Ct. at 2968 (quoting *State v. Dixon,* 283 So.2d 1, 9 (Fla.1973), *cert. denied sub nom. Hunter v. Florida,* 416

U.S. 943, 94 S.Ct. 1950, 40 L.Ed.2d 295 (1974)). Though state courts must strive to limit the sentencing body's discretion, they are not required to (and probably cannot) eliminate all subjective considerations. Aggravating factors need not be defined with "mathematical precision;" they need only be defined sufficiently to provide "meaningful guidance to the sentencer." *Walton,* 110 S.Ct. at 3058. Therefore, our analysis should not be based on individual words, but on the state courts' pronouncements taken as a whole.

The Nebraska Supreme Court, prior to Moore's sentencing, had limited subsection d " 'to those situations where depravity is apparent to such an extent as to obviously offend all standards of morality and intelligence.' The standard encompasses acts which are totally and senselessly bereft of any regard for human life." *State v. Stewart,* 197 Neb. 497, 522–23, 250 N.W.2d 849, 864 (1977) (quoting *State v. Simants,* 197 Neb. 549, 565–67, 250 N.W.2d 881, 891, *cert. denied* 434 U.S. 878, 98 S.Ct. 231, 54 L.Ed.2d 158 (1977)). The court's attempt to label various aspects of Nebraska's scheme as "objective" or "subjective" based on the presence of certain adverbs and adjectives, *see Moore* 904 F.2d at 1230, has resulted in unnecessary semantic endeavors; after all, the standards approved in *Walton* contain adverbs, adjectives, and other words of subjective meaning.

The basis for my dissent is further supported by the factual circumstances of this case. Moore killed two blameless and hapless cab drivers in less than one week. On both occasions, the killings were planned as part of a larger scheme to rob the victim-drivers. Moore called taxis from a phone booth, then hid nearby so that he could "determine whether the driver would be a suitable victim, *i.e.,* not too young, since the defendant stated that it was easier for him to shoot an older man rather than a younger man nearer his own age." *State v. Moore,* 210 Neb. 457, 461, 316 N.W.2d 33, 37 (1982). If the driver was "too old," Moore simply did not identify himself as the fare. If the driver was not "too old," Moore carried out his preconceived plan to rob and murder the driver. If a senseless

murder for lucre could ever be deemed cruel and atrocious, certainly this is such a murder.

After comparing the Court-approved formulations to the Nebraska Supreme Court's definitions, I fail to see any constitutional vagueness or deficiency in the Nebraska law. If Arizona's and Florida's judicial narrowing passes constitutional muster, so too should Nebraska's. For these reasons, I believe rehearing should be granted so that we can further consider this case in light of *Walton* and *Lewis*.