_____

Nos. 96-1309/1427
_____

Peter L. Hochstein,                    *
                                       *
    Appellee/Cross-appellant,      *
                                       * Appeals from the United States
    v.                             * District Court for the
                                       * District of Nebraska
Frank X. Hopkins,                      *
                                       *
    Appellant/Cross-appellee.      *

_____

Submitted:  October 21, 1996

Filed:  May 12, 1997
_____

Before RICHARD S. ARNOLD, Chief Judge, and McMILLIAN and BEAM,
    Circuit Judges.
_____

McMILLIAN, Circuit Judge.

    The State of Nebraska (state) appeals from a final order and judgment entered in the United States District Court[1] for the District of Nebraska granting partial relief on a petition for a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 by Peter L. Hochstein (petitioner). Hochstein v. Hopkins, No. CV 84-L-755 (D. Neb. Jan. 16, 1996) (Memorandum Opinion) (hereinafter "slip op."); id. (Order and Judgment). For reversal, the state argues that the district court erred in holding that it was not harmless beyond a reasonable doubt for the Nebraska state

_____

    [1]The Honorable Lyle E. Strom, United States District Judge for the District of Nebraska.

courts to consider an unconstitutionally vague statutory aggravating factor in sentencing petitioner to the death penalty.  Slip op. at 52 (reducing petitioner's sentence from death to life imprisonment, subject to an opportunity for the Nebraska Supreme Court, within ninety days, to reweigh the aggravating and mitigating circumstances, conduct a harmless error review, or remand the case to the state trial court for resentencing). Petitioner cross-appeals.  He argues that the district court erred in: (1) permitting the Nebraska Supreme Court an opportunity to conduct a harmless error review; (2) denying on the merits his claims of federal constitutional and statutory violations resulting from the state trial court's admission of Lon Reams's testimony at trial; (3) denying on the merits his claims of ineffective assistance of counsel at trial and sentencing; and (4) denying his remaining claims for habeas relief because they have been procedurally defaulted and the default is not excused by cause and prejudice nor would its enforcement result in a fundamental miscarriage of justice, or because they otherwise may not be raised in this § 2254 action.  We modify the order and, for the reasons stated below, affirm.  On this day, we have simultaneously filed an opinion in the habeas action brought by C. Michael Anderson, who was petitioner's co-defendant in the underlying state criminal proceedings.  Anderson v. Hopkins, Nos. 96-1305/1306 (8th Cir. May 12, 1997).  Because many of the issues raised on appeal and cross-appeal in the present case are similar or identical to the issues addressed in our opinion in Anderson's case, we incorporate by reference herein portions of that opinion.

**Background**

The following facts are largely taken from the Nebraska Supreme Court's decision affirming petitioner's conviction and

sentence.  State v. Anderson, 296 N.W.2d 440 (Neb. 1980), cert. denied, 450 U.S. 1025 (1981).  On November 2, 1975, the body of Ronald J. Abboud, was discovered in a rural area near Omaha, Nebraska.  He had been shot in the head, back, and neck with a .22 caliber pistol.  By June 1976, petitioner and Anderson were suspects in the police investigation of Abboud's murder.  Abboud was Anderson's employer, and Anderson and petitioner were friends.  Abboud's family hired a private investigator, Dennis Whelan, and instructed him to investigate Anderson's and petitioner's involvement in the crime.  Whelan was informed that Lon Reams was associated with Anderson and possibly also involved.  At that time, the police already knew about Reams and had interviewed him as part of their investigation.

Whelan's investigation of Anderson and petitioner included, among other things, wiretapping their apartments.  Whelan also interviewed a woman named Mila Dickman who was employed by Anderson and was closely associated with Reams.  In the spring of 1977, Whelan informed the county prosecutor, Samuel Cooper, about his suspicions of Anderson, petitioner, and Reams; according to Cooper's testimony at a later suppression hearing, however, Whelan did not provide Cooper with any new information.  Later, Cooper instructed Whelan to cease his wiretapping operation.  Whelan also learned from Cooper that there was a possibility that Reams would be granted immunity if Reams were to testify against petitioner and Anderson.  Whelan relayed this information to Reams and, at the same time, falsely told Reams that he (Whelan) had overheard petitioner and Anderson conspiring against Reams and that he knew the prosecutor had a strong case against Reams.  After consulting with an attorney, Reams met with Whelan and admitted his involvement in the murder of Abboud.  Later that day, Reams provided Cooper with a statement regarding the murder of Abboud.

Reams agreed to testify against Anderson and petitioner under a grant of immunity. The facts, according to his testimony, are summarized as follows. Anderson was extremely hostile toward Abboud because of Abboud's unfair business practices, a matter which Anderson, petitioner, and Reams discussed. At some point, petitioner fixed Reams's .22 caliber Ruger pistol and offered to murder Abboud for money. Anderson agreed to pay petitioner $1,500 to kill Abboud. It was agreed that petitioner would pose as a prospective purchaser of a remote piece of rural land which Abboud's real estate company was selling, request that Abboud drive him to the site, kill Abboud once there, and then telephone Reams who was to telephone Anderson and pick up petitioner. Their first attempt failed because Abboud was not alone when he showed petitioner the property. Petitioner then scheduled another visit to the site and, when Abboud alone drove petitioner there, petitioner murdered Abboud and dumped Abboud's body in a creek bed. The body was discovered three days later.

The jury found petitioner and Anderson each guilty of first degree murder. Following the trial, a sentencing hearing took place before a three-judge panel, which unanimously sentenced petitioner and Anderson each to the death penalty. State v. Anderson, Nos. 99-392/99-394 (Neb. Dist. Ct. Aug. 24, 1978) (Order of Sentencing). The sentencing court held that two statutory aggravating factors applied to petitioner's case: (1) the murder was committed for hire or for pecuniary gain, as contemplated in Neb. Rev. Stat. § 29-2523(1)(c) (hereinafter referred to as § (1)(c)), and (2) the murder "manifested exceptional depravity by ordinary standards of morality and intelligence," within the meaning of the second prong of Neb. Rev. Stat. § 29-2523(1)(d)

(hereinafter referred to as § (1)(d)).[2] Petitioner and Anderson appealed to the Nebraska Supreme Court, which unanimously affirmed their convictions and sentences. State v. Anderson, 296 N.W.2d at 454.

Petitioner originally filed the present habeas action in federal district court in 1984. Petitioner, with leave of court, amended his habeas petition in 1985 and 1986. In 1986, the state filed a response. A magistrate judge subsequently stayed the petition pending a final decision in an unrelated case which was pending before the Eighth Circuit and involved the constitutionality of the second prong of § (1)(d), setting forth the "exceptional depravity" aggravator. In 1991, the Eighth Circuit disposed of that case, holding that the "exceptional depravity" language of § (1)(d) was too vague to provide sufficient guidance to the sentencer and, at the time the petitioner in that case was sentenced, that language had not been construed by the Nebraska Supreme Court with sufficient specificity to meet constitutional standards. Moore v. Clarke, 951 F.2d 895, 896-97 (8th Cir. 1991) (Moore) (denying petition for rehearing), cert. denied, 504 U.S. 930 (1992).[3]

---

[2]The aggravating circumstances in Neb. Rev. Stat. § 29-2523(1)(c), (d) are fully set forth as follows:

(c) The murder was committed for hire, or for pecuniary gain, or the defendant hired another to commit the murder for the defendant;

(d) The murder was especially heinous, atrocious, cruel, or manifested exceptional depravity by ordinary standards of morality and intelligence.

[3]In Moore v. Clarke, 951 F.2d 895, 897 (8th Cir. 1991), cert. denied, 504 U.S. 930 (1992), the Eighth Circuit noted "[t]he standard applied to Moore in 1980 was modified substantially six years later by [State v. Palmer, 399 N.W.2d 706 (1986), cert. denied, 484 U.S. 872 (1987)], and the changes found desirable by the Nebraska Supreme Court in Palmer then demonstrate that the standards applied to Moore were vague."

After the Eighth Circuit decided <u>Moore</u>, the stay imposed in the present habeas action was lifted. The state conceded that, in light of <u>Moore</u>, the "exceptional depravity" aggravating factor had been improperly considered by the sentencing panel, but argued that the error was harmless beyond a reasonable doubt, as was the case in <u>Williams v. Clarke</u>, 40 F.3d 1529 (8th Cir. 1994) (<u>Williams</u>), <u>cert. denied</u>, 115 S. Ct. 1397 (1995).[4] Upon review of both the sentencing court's and the Nebraska Supreme Court's written decisions, the district court concluded: "[i]t is clear from those opinions that both the sentencing court and the Nebraska Supreme Court placed considerable weight on the exceptional depravity aggravator." Slip op. at 52. On that basis, the district court reasoned:

> this Court cannot say that there is no reasonable possibility that the aggravating circumstance 1(d) might have contributed to the decision to impose the death penalty, and that is the standard the Court is required to apply. For these reasons, the Court believes that the petition for writ of habeas corpus must be granted as to this issue. However, this does not require a retrial or resentencing. It does require that the petitioner's sentence be

---

[4]In <u>Williams v. Clarke</u>, 40 F.3d 1529, 1540 (8th Cir. 1994) (<u>Williams</u>), <u>cert. denied</u>, 115 S. Ct. 1397 (1995), the district court had granted the petitioner a writ of habeas corpus because the death penalty in that case had been based in part upon a finding of "exceptional depravity" under the second prong of Neb. Rev. Stat. § 29-2523(1)(d). On appeal, the Eighth Circuit held that, absent Supreme Court authority to the contrary, this court is authorized to use the constitutional harmless error standard when a state sentencing court has considered an unconstitutionally vague portion of an aggravating circumstance. The <u>Williams</u> court then went on to conclude, in that case, that the sentencing court's consideration of the "exceptional depravity" factor was harmless beyond a reasonable doubt and reversed the district court's decision to grant habeas relief. <u>Id.</u> at 1541-42.

-6-

> reduced to life imprisonment unless within ninety (90) days of the date of this opinion, the Nebraska Supreme Court either reweigh[s] the aggravating and mitigating circumstances, conduct[s] a harmless error review, or remand[s] the case back to the Douglas County District Court for resentencing.

Id.

Providing detailed reasons, the district court denied all of petitioner's remaining claims for habeas relief. Id. at 3-47, 53-55. This appeal and cross-appeal followed.

**Discussion**

State's appeal on harmless error issue

The state appeals the district court's holding that it was not harmless beyond a reasonable doubt for the state sentencing court and the Nebraska Supreme Court to consider the unconstitutional aggravator in their respective decisions to impose and uphold the death penalty. The state argues that the district court erred in focusing on whether the state courts placed considerable weight on the invalid factor and whether that factor contributed to their decisions. By contrast, the state argues, the test under Williams, 40 F.3d at 1541, looks at whether the properly considered valid factors were so overwhelming that the decision would have been the same in the absence of the invalid factor. Although the only properly considered aggravator was the § (1)(c) murder-for-hire factor, and the only mitigating factor was that petitioner did not have a prior criminal record, the state contends that the "exceptional depravity" aggravator played a relatively minor role in both state court decisions, that all the circumstances relevant to the "exceptional depravity" aggravator were equally relevant to

the murder-for-hire aggravator, and that the district court should have found harmless error.

We have already addressed these precise arguments in <u>Anderson v. Hopkins</u>, slip op. at 6-10. Because the state courts relied upon the same facts and reasoning in their decisions to impose and uphold the death penalty for each of petitioner and Anderson, <u>State v. Anderson</u>, Nos. 99-392/99-394, slip op. at 15-17 (Neb. Dist. Ct. Aug. 24, 1978); <u>id.</u>, 296 N.W.2d at 454, and the district court provided virtually identical reasons for granting partial habeas relief to each of petitioner and Anderson, we incorporate by reference herein our reasons stated in <u>Anderson v. Hopkins</u>, slip op. at 9-10, for affirming the district court's finding that the error was not harmless. Accordingly, we hold, in the present case, that the state has not sufficiently proven that petitioner's sentence would have been the same under Nebraska state law absent consideration of the invalid factor, and we affirm the order and judgment of the district court on this harmless error issue.

<u>Petitioner's cross-appeal on independent harmless error review</u>

As noted above, the district court, upon concluding that consideration of the "exceptional depravity" factor was not harmless beyond a reasonable doubt, ordered that petitioner's sentence be reduced to life imprisonment "unless within ninety (90) days of the date of this opinion, the Nebraska Supreme Court either reweigh[s] the aggravating and mitigating circumstances, conduct[s] a harmless error review, or remand[s] the case back to the Douglas County District Court for resentencing." Slip op. at 52. Petitioner, on cross-appeal, challenges only that portion of the above-quoted language which permits the Nebraska Supreme Court to conduct a harmless error review. This issue is identical in all relevant respects to the corresponding issue raised by Anderson in

-8-

his habeas cross-appeal. We therefore incorporate by reference herein our reasons stated in Anderson v. Hopkins, slip op. at 11-13, for affirming the district court's disposition, including its holding that the Nebraska Supreme Court may engage in independent harmless error review of the state courts' decisions.

## Remaining claims for relief raised by petitioner on cross-appeal

We further find no merit to petitioner's remaining arguments on cross-appeal. He claims his federal constitutional and statutory rights under the Fourth, Fifth, and Fourteenth Amendments, and under the federal wiretapping statute, 18 U.S.C. § 2510 et seq., were violated because Reams was permitted to testify at the criminal trial in state court even though Reams's testimony was indirectly derived from unlawful wiretaps. Upon careful review of the procedural history of the present case and the arguments presented on appeal, we hold these claims are foreclosed because petitioner had a full and fair opportunity to litigate them in state court. Stone v. Powell, 428 U.S. 465, 481-82 (1976); see also Zagarino v. West, 422 F. Supp. 812, 814-20 (E.D.N.Y. 1976) (where a habeas claim raises a violation of a provision of the federal wiretap statute that implements a Fourth Amendment search and seizure policy and is subject to the wiretap statute's exclusionary rule, the same limited review shall apply as that which applies under Stone v. Powell to Fourth Amendment search and seizure habeas claims).

Petitioner also raises on cross-appeal the district court's denial of his claim of ineffective assistance of counsel at trial and at sentencing. In addition to alleging that his attorney was deficient in failing to interview, prepare, and call potentially favorable witnesses, petitioner alone maintains that his trial attorney suffered from mental, physical, and emotional problems

-9-

which incapacitated his attorney and deprived petitioner of constitutionally adequate representation at trial and sentencing. On the issues related to the attorney's failure to call certain witnesses, we have already considered those issues and incorporate by reference herein our reasons stated in Anderson v. Hopkins, slip op. at 13-14, for agreeing with the district court that the witnesses' testimony was unlikely to have affected the outcome of the trial. We therefore affirm the district court's conclusion that no Sixth Amendment violation occurred. As to petitioner's other ineffective assistance arguments, we note that the district court carefully and thoroughly considered all aspects of petitioner's claim, slip op. at 21-47, including the specific allegation that petitioner's attorney was incapacitated, id. at 25-32. Upon review, we agree with the district court's conclusion that petitioner has failed to show that his attorney's alleged deficiencies were of constitutional magnitude.

Finally, we hold that the remaining claims raised by petitioner in his cross-appeal were properly rejected by the district court because they have been procedurally defaulted and the default is not excused by cause and prejudice nor would enforcement of the default result in a fundamental miscarriage of justice, or because they otherwise may not be raised in this § 2254 action. Thus, we affirm the district court's denial of relief on all of petitioner's remaining claims for habeas relief.

## Conclusion

The order and judgment of the district court is modified to provide that petitioner's sentence will be reduced to life imprisonment, unless within ninety (90) days of the date of our mandate in the present case, the Nebraska Supreme Court reweighs

-10-

the aggravating and mitigating circumstances, conducts an independent harmless error review, or remands the case to the sentencing court for resentencing.  The order and judgment of the district court is affirmed as modified.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.