_____

Nos. 96-1305/1306

_____

C. Michael Anderson,           *
                               *
     Appellee/Cross-appellant, *
                               *     Appeals from the United States
     v.                        *     District Court for the
                               *     District of Nebraska
Frank X. Hopkins,              *
                               *
     Appellant/Cross-appellee. *

_____

Submitted:  October 21, 1996

Filed:  May 12, 1997

_____

Before RICHARD S. ARNOLD, Chief Judge, and McMILLIAN and BEAM,
     Circuit Judges.

_____

McMILLIAN, Circuit Judge.


     The State of Nebraska (state) appeals from a final order and judgment
entered in the United States District Court[1] for the District of Nebraska
granting partial relief on a petition for a writ of habeas corpus filed
pursuant to 28 U.S.C. § 2254 by C. Michael Anderson (petitioner).  Anderson
v. Hopkins, No. CV 84-L-741 (D. Neb. Jan. 16, 1996) (Memorandum Opinion)
(hereinafter "slip op."); id. (Order and Judgment).  For reversal, the
state argues that the district court erred in holding that it was not
harmless beyond a reasonable doubt for the Nebraska state

_____

[1]The Honorable Lyle E. Strom, United States District Judge for
the District of Nebraska.

courts to consider an unconstitutionally vague statutory aggravating factor in sentencing petitioner to the death penalty. Slip op. at 48 (reducing petitioner's sentence from death to life imprisonment, subject to an opportunity for the Nebraska Supreme Court, within ninety days, to reweigh the aggravating and mitigating circumstances, conduct a harmless error review, or remand the case to the state trial court for resentencing). Petitioner cross-appeals. He argues that the district court erred in: (1) permitting the Nebraska Supreme Court an opportunity to conduct a harmless error review; (2) denying on the merits his claims of federal constitutional and statutory violations resulting from the state trial court's admission of Lon Reams's testimony at trial; (3) denying on the merits his claims of ineffective assistance of trial counsel; and (4) denying his remaining claims for habeas relief because they have been procedurally defaulted and the default is not excused by cause and prejudice nor would its enforcement result in a fundamental miscarriage of justice, or because they otherwise may not be raised in this § 2254 action. We modify the order and judgment of the district court and, for the reasons stated below, affirm the order and judgment as modified.

## Background

The following facts are largely taken from the Nebraska Supreme Court's decision affirming petitioner's conviction and sentence. State v. Anderson, 296 N.W.2d 440 (Neb. 1980), cert. denied, 450 U.S. 1025 (1981). On November 2, 1975, the body of Ronald J. Abboud, petitioner's employer, was discovered in a rural area near Omaha, Nebraska. He had been shot in the head, back, and neck with a .22 caliber pistol. By June 1976, petitioner and his friend, Peter Hochstein, were suspects in the police investigation of Abboud's murder. Abboud's family hired a private investigator,

Dennis Whelan, and instructed him to investigate petitioner's and Hochstein's involvement in the crime. Whelan was informed that Lon Reams was associated with petitioner and possibly also involved. At that time, the police already knew about Reams and had interviewed him as part of their investigation.

Whelan's investigation of petitioner and Hochstein included, among other things, wiretapping their apartments. Whelan also interviewed a woman named Mila Dickman who was employed by petitioner and was closely associated with Reams. In the spring of 1977, Whelan informed the county prosecutor, Samuel Cooper, about his suspicions of petitioner, Hochstein, and Reams; according to Cooper's testimony at a later suppression hearing, however, Whelan did not provide Cooper with any new information. Later, Cooper instructed Whelan to cease his wiretapping operation. Whelan also learned from Cooper that there was a possibility that Reams would be granted immunity if Reams were to testify against petitioner and Hochstein. Whelan relayed this information to Reams and, at the same time, falsely told Reams that he (Whelan) had overheard petitioner and Hochstein conspiring against Reams and that he knew the prosecutor had a strong case against Reams. After consulting with an attorney, Reams met with Whelan and admitted his involvement in the murder of Abboud. Later that day, Reams provided Cooper with a statement regarding the murder of Abboud.

Reams agreed to testify against petitioner and Hochstein under a grant of immunity. The facts, according to his testimony, are summarized as follows. Petitioner was extremely hostile toward Abboud because of Abboud's unfair business practices, a matter which petitioner, Hochstein, and Reams discussed. At some point, Hochstein fixed Reams's .22 caliber Ruger pistol and offered to murder Abboud for money. Petitioner agreed to pay Hochstein $1,500 to kill Abboud. It was agreed that Hochstein would pose as a

prospective purchaser of a remote piece of rural land which Abboud's real estate company was selling, request that Abboud drive him to the site, kill Abboud once there, and then telephone Reams who was to telephone petitioner and pick up Hochstein. Their first attempt failed because Abboud was not alone when he showed Hochstein the property. Hochstein then scheduled another visit to the site and, when Abboud alone drove Hochstein there, Hochstein murdered Abboud and dumped Abboud's body in a creek bed. The body was discovered three days later.

The jury found petitioner and Hochstein each guilty of first degree murder. Following the trial, a sentencing hearing took place before a three-judge panel, which unanimously sentenced petitioner and Hochstein each to the death penalty. State v. Anderson, Nos. 99-392/99-394 (Neb. Dist. Ct. Aug. 24, 1978) (Order of Sentencing). The sentencing court held that two statutory aggravating factors applied to petitioner's case: (1) petitioner hired another to commit the murder, as contemplated in Neb. Rev. Stat. § 29-2523(1)(c) (hereinafter referred to as § (1)(c)), and (2) the murder "manifested exceptional depravity by ordinary standards of morality and intelligence," within the meaning of the second prong of Neb. Rev. Stat. § 29-2523(1)(d) (hereinafter referred to as § (1)(d)).[2] Petitioner and Hochstein appealed to the Nebraska Supreme Court, which unanimously affirmed their convictions and sentences. State v. Anderson, 296 N.W.2d at 454.

---

[2]The aggravating circumstances in Neb. Rev. Stat. § 29-2523(1)(c), (d) are fully set forth as follows:

> (c) The murder was committed for hire, or for pecuniary gain, or the defendant hired another to commit the murder for the defendant;

> (d) The murder was especially heinous, atrocious, cruel, or manifested exceptional depravity by ordinary standards of morality and intelligence.

Petitioner originally filed the present habeas action in federal district court in 1984. Petitioner, with leave of court, amended his habeas petition in 1985 and 1986. In 1986, the state filed a response. A magistrate judge subsequently stayed the petition pending a final decision in an unrelated case which was pending before the Eighth Circuit and involved the constitutionality of the second prong of § (1)(d), setting forth the "exceptional depravity" aggravator. In 1991, the Eighth Circuit disposed of that case, holding that the "exceptional depravity" language of § (1)(d) was too vague to provide sufficient guidance to the sentencer and, at the time the petitioner in that case was sentenced, that language had not been construed by the Nebraska Supreme Court with sufficient specificity to meet constitutional standards. Moore v. Clarke, 951 F.2d 895, 896-97 (8th Cir. 1991) (Moore) (denying petition for rehearing), cert. denied, 504 U.S. 930 (1992).[3]

After the Eighth Circuit decided Moore, the stay imposed in the present habeas action was lifted. The state conceded that, in light of Moore, the "exceptional depravity" aggravator had been improperly considered by the sentencing panel, but argued that the error was harmless beyond a reasonable doubt, as was the case in Williams v. Clarke, 40 F.3d 1529 (8th Cir. 1994) (Williams), cert. denied, 115 S.Ct. 1397 (1995).[4]

---

[3]In Moore v. Clarke, 951 F.2d 895, 897 (8th Cir. 1991), cert. denied, 504 U.S. 930 (1992), the Eighth Circuit noted "[t]he standard applied to Moore in 1980 was modified substantially six years later by [State v. Palmer, 399 N.W.2d 706 (1986), cert. denied, 484 U.S. 872 (1987)], and the changes found desirable by the Nebraska Supreme Court in Palmer then demonstrate that the standards applied to Moore were vague."

[4]In Williams v. Clarke, 40 F.3d 1529, 1540 (8th Cir. 1994) (Williams), cert. denied, 115 S.Ct. 1397 (1995), the district court had granted the petitioner a writ of habeas corpus because the death penalty in that case had been based in part upon a finding of "exceptional depravity" under the second prong of Neb. Rev. Stat. § 29-2523(1)(d). On appeal, the Eighth Circuit held that, absent Supreme Court authority to the contrary, this court is authorized to use the constitutional harmless error standard when a state sentencing court has considered an unconstitutionally vague portion of an aggravating circumstance. The Williams court then went on to conclude, in that case, that the sentencing court's consideration

-5-

Upon review of both the sentencing

---

of the "exceptional depravity" factor was harmless beyond a reasonable doubt and reversed the district court's decision to grant habeas relief. Id. at 1541-42.

court's and the Nebraska Supreme Court's written decisions, the district court concluded: "[i]t is clear from those opinions that both the sentencing court and the Nebraska Supreme Court placed considerable weight on the exceptional depravity aggravator." Slip op. at 48. On that basis, the district court reasoned:

> this Court cannot say that there is no reasonable possibility that the aggravating circumstance 1(d) might have contributed to the decision to impose the death penalty, and that is the standard the Court is required to apply. For these reasons, the Court believes that the petition for writ of habeas corpus must be granted as to this issue. However, this does not require a retrial or resentencing. It does require that the petitioner's sentence be reduced to life imprisonment unless within ninety (90) days of the date of this opinion, the Nebraska Supreme Court either reweigh[s] the aggravating and mitigating circumstances, conduct[s] a harmless error review, or remand[s] the case back to the Douglas County District Court for resentencing.

Id.

Providing detailed reasons, the district court denied all of petitioner's remaining claims for habeas relief. Id. at 3-42, 48-50. This appeal and cross-appeal followed.

**Discussion**

<u>State's appeal on harmless error issue</u>

The state appeals the district court's holding that it was not harmless error for the state sentencing court and the Nebraska Supreme Court to consider the unconstitutional aggravator in their respective decisions to impose and uphold the death penalty. The state argues that the district court erred in focusing on whether the state courts placed considerable weight on the invalid factor and whether that factor contributed to their decisions. By contrast, the state argues, the test under <u>Williams</u>, 40 F.3d at 1541, looks at whether the properly considered valid factors were so overwhelming that the decision would have been the same in the absence of the invalid factor. Although the only properly considered aggravator was the § (1)(c) murder-for-hire factor, and the only mitigating factor was that petitioner did not have a prior criminal record, the state contends that the "exceptional depravity" aggravator played a relatively minor role in both state courts' decisions. For example, the state highlights the following statement by the sentencing court: "[t]he evil inherent in the long planning of this murder, and in the deliberate avoidance of opportunities to withdraw far overcomes the fact that, before defendants began to plan this atrocity, defendants were law-abiding citizens." <u>State v. Anderson</u>, Nos. 99-392/99-394, slip op. at 16 (Neb. Dist. Ct. Aug. 24, 1978). Moreover, the state notes, the sentencing court specifically observed that this type of cold, calculated, and dispassionate murder plot was unprecedented in the Nebraska case law. <u>Id.</u> at 17. The state also maintains that all of the circumstances that were considered by the sentencing court in connection with the § (1)(d) "exceptional depravity" factor were equally relevant to the § (1)(c) murder-for-hire aggravator, which

was properly considered. Thus, the state concludes, the outcome of the weighing process would have been the same even if the "exceptional depravity" factor had not been separately considered. Turning to the Nebraska Supreme Court's decision, the state notes strong language from that opinion as well, and argues that the § (1)(c) murder-for-hire aspect of the killing was particularly influential in that court's unanimous decision to uphold the death penalty. The Nebraska Supreme Court explained "the killing of Abboud was a business transaction and a most aggravating circumstance within the meaning of § 29-2523." State v. Anderson, 296 N.W.2d at 454. The Nebraska Supreme Court further opined:

> [i]f ever a situation exists in which the imposition of the death penalty is appropriate, it is clearly in the case of "killers for hire." A careful review of the entire record in light of both § 29-2523 and the previous decisions of this court discloses that there are no mitigating factors in this case which would justify not imposing the most severe penalty for the most heinous crime[:] the absolute and willful killing of a human for money. We believe the imposition of the death penalty in this case is amply justified.

Id. Therefore, based upon the strong language employed by both the state sentencing court and the Nebraska Supreme Court, and the fact that the considerations related to the murder-for-hire aggravator were virtually the same as those related to the "exceptional depravity" aggravator, the state argues that the district court should have found harmless error because the properly considered murder-for-hire factor was so overwhelming in comparison to the mitigating factor that the outcome would have been the same absent the "exceptional depravity" factor.

In response, petitioner argues that the district court properly concluded that the use of the "exceptional depravity" factor was not harmless beyond a reasonable doubt. Petitioner

-9-

emphasizes that Nebraska is a pure "weighing" state -- in other words, the state courts are required by state law to weigh the aggravating circumstances against the mitigating circumstances in determining whether the death penalty is appropriate in a given case. Petitioner cites Neb. Rev. Stat. § 29-2522(2), which provides "[o]ne is not death eligible so long as the weight of the statutory and nonstatutory mitigating circumstances approaches or exceeds the weight of the statutory aggravating circumstances." Petitioner argues that, because the sentencing court viewed the § (1)(c) and § (1)(d) considerations as integrally related, the whole weighing process was tainted by the unconstitutionally vague factor and it is impossible to conclude that the outcome of that weighing process would have been the same absent the invalid "exceptional depravity" considerations. Petitioner distinguishes the present case from Williams on the ground that, in Williams, the first prong of § (1)(d) and three other valid aggravators were present. Petitioner also maintains that the district court considered and rejected the state's argument that the Nebraska Supreme Court treated the "exceptional depravity" aggravator as having minor importance. In any case, petitioner asserts, the Nebraska Supreme Court's opinion is fundamentally flawed insofar as it contains legal generalizations which conflict with the constitutional requirement of individualized sentencing in capital cases and the constitutional prohibition against limits on the sentencer's discretion not to impose the death penalty. Finally, petitioner notes that -- although Nebraska courts are required to weigh, not count, aggravating and mitigating circumstances -- it is nevertheless true that no Nebraska court has ever imposed the death penalty on the basis of only one aggravating factor, which would be the effect of reversing the district court's finding of no harmless error in the present case.

Upon de novo review, we agree with the district court's recognition in the present case of a reasonable possibility that the invalid aggravator contributed to the state courts' decisions. Moreover, contrary to the state's argument, the district court's analysis in the present case is not inconsistent with Williams. The following quotation from Williams, 40 F.3d at 1541, contains the "so overwhelming" language upon which the state relies, and puts that language into its proper context.

> [I]n a federal habeas review where the state trial or appellate court found no constitutional error and thus had no reason to consider harmlessness, we apply the Chapman[5] analysis to determine if the constitutional error that we have identified requires habeas relief.
>
> . . . .
>
> We recognize the heavy burden the state bears in proving that a constitutional error is harmless beyond a reasonable doubt. . . . [T]he issue under Chapman is whether the sentencer actually rested its decision to impose the death penalty on the valid evidence and the constitutional aggravating factors, independently of the vague factor considered; in other words, whether what was actually and properly considered in the decision-making process was "so overwhelming" that the decision would have been the same even absent the invalid factor.

In the present case, the district court held that it could not say that there was no reasonable possibility that the aggravating circumstance in § (1)(d) might have contributed to the decision to impose the death penalty. Implicit in this holding is the conclusion that the state has failed to meet its burden of proving either that the state courts actually rested their death penalty decisions on "the valid evidence and the constitutional aggravating factors, independently of the vague factor considered" or that

---

[5]Chapman v. California, 386 U.S. 18 (1967).

"what was actually and properly considered in the decision-making process was 'so overwhelming' that the decision would have been the same even absent the invalid factor." Id. Therefore, the district court's reasoning was not materially inconsistent with Williams. In sum, we hold in the present case that the state has not sufficiently demonstrated that petitioner's sentence would have been the same under Nebraska state law absent consideration of the invalid factor. We affirm the order and judgment of the district court on this harmless error issue.

Petitioner's cross-appeal on independent harmless error review

As noted above, the district court, upon concluding that consideration of the "exceptional depravity" factor was not harmless beyond a reasonable doubt, ordered that petitioner's sentence be reduced to life imprisonment "unless within ninety (90) days of the date of this opinion, the Nebraska Supreme Court either reweigh[s] the aggravating and mitigating circumstances, conduct[s] a harmless error review, or remand[s] the case back to the Douglas County District Court for resentencing." Slip op. at 48. Petitioner, on cross-appeal, challenges only that portion of the above-quoted language which permits the Nebraska Supreme Court to conduct a harmless error review. Petitioner argues "[t]he grant of relief should be modified to permit the Nebraska Supreme Court to conduct a Clemons[6] reweighing of the aggravating and mitigating circumstances, if such appellate resentencing is proper under state law, or to remand the case . . . for resentencing." Brief for Appellee/Cross-Appellant at 12.

Relying on Reeves v. Hopkins, 76 F.3d 1424 (8th Cir.), cert. denied, 117 S. Ct. 307 (1996), the state argues in response:

---

[6]Clemons v. Mississippi, 494 U.S. 738 (1990).

> [i]f this court agrees with the district court that the error in the use of the exceptional depravity aggravator was not harmless, then we feel that we are bound by the district court's determination that constitutionally harmless error is not present. However, that is not the end of the options under Clemons v. Mississippi, 494 U.S. 738 (1990). Clemons permits a state appellate court [either to] perform a harmless error analysis or to reweigh the mitigators and aggravators and determine whether the scale tips in favor of death, or whether the balance has been altered by the addition or removal of an aggravator or mitigator so that it cannot find the error harmless beyond a reasonable doubt.

Reply Brief for Appellant/Cross-Appellee at 10.

In Reeves v. Hopkins, which sets forth a comprehensive analysis of Nebraska's statutory scheme, this court explained "[a]s far as the federal constitution is concerned, in a weighing jurisdiction, a state appellate court may cure a constitutional deficiency arising from improper applications or limitations of aggravating or mitigating circumstances in a capital case by engaging either in reweighing, or in traditional harmless error analysis."  76 F.3d at 1428 (footnote omitted) (citing Clemons, 494 U.S. at 754).  This court also noted that "[s]tate appellate courts are not required to reweigh, and may in certain cases find that remand is more appropriate or is even required."  Id. at 1430 n.8 (citing Clemons, 494 U.S. at 754 & n.5).

Thus, upon review of this issue raised by petitioner, we hold that the district court's decision comports with Clemons, as interpreted in Reeves v. Hopkins, insofar as it provides the Nebraska Supreme Court an opportunity to reweigh the factors, conduct an independent harmless error analysis, or remand the case to the state sentencing court.  We note that the district court's harmless error ruling was for the sole purpose of deciding whether to grant the petition for a writ of habeas corpus and does not

preclude the Nebraska Supreme Court from independently concluding that the application of the § (1)(d) aggravator was harmless error.

Accordingly, we affirm the district court's disposition, including its holding that the Nebraska Supreme Court may engage in independent harmless error review of the state courts' decisions.

Remaining claims for relief raised by petitioner on cross-appeal

We further find no merit to petitioner's remaining arguments on cross-appeal. He claims his federal constitutional and statutory rights under the Fourth, Fifth, and Fourteenth Amendments, and under the federal wiretapping statute, 18 U.S.C. § 2510 et seq., were violated because Reams was permitted to testify at petitioner's criminal trial even though Reams's testimony was arguably indirectly derived from unlawful wiretaps. Upon careful review of the procedural history of the present case and the arguments presented on appeal, we hold these claims are foreclosed because petitioner had a full and fair opportunity to litigate them in state court. Stone v. Powell, 428 U.S. 465, 481-82 (1976); see also Zagarino v. West, 422 F. Supp. 812, 814-20 (E.D.N.Y. 1976) (where a habeas claim raises a violation of a provision of the federal wiretap statute that implements a Fourth Amendment search and seizure policy and is subject to the wiretap statute's exclusionary rule, the same limited review shall apply as that which applies under Stone v. Powell to Fourth Amendment search and seizure habeas claims).

Petitioner also raises on cross-appeal the district court's denial of his claim that he received ineffective assistance of counsel because his trial attorney failed to interview, prepare, and call potentially favorable witnesses. Although petitioner had procedurally defaulted this claim, the district court, pursuant to

-14-

<u>Schlup v. Delo</u>, 513 U.S. 298 (1995) (<u>Schlup</u>), held an evidentiary hearing to permit examination of the allegedly exculpatory evidence. Thereafter, the district court concluded that "[a]n analysis of this evidence does not persuade the Court that, with this proposed evidence, no juror, acting reasonably, would have voted to find petitioner guilty." Slip op. at 39. We agree that the witnesses' testimony was unlikely to have affected the outcome of the trial. There were significant inconsistencies in the proposed witnesses' testimony, and their testimony was in some ways consistent with the state's theory. The trial attorney's deliberate decision not to use many of these witnesses was appropriately treated by the district court as a matter of trial strategy, not rising to the level of constitutionally deficient legal representation. Accordingly, we affirm the district court's holding that no Sixth Amendment violation occurred.

Finally, we hold that the remaining claims raised by petitioner on cross-appeal were properly rejected by the district court either because they have been procedurally defaulted and the default is not excused by cause and prejudice nor would enforcement of the default result in a fundamental miscarriage of justice, or because they otherwise may not be raised in this § 2254 action. Thus, we affirm the district court's denial of relief on all of petitioner's remaining claims for habeas relief.

**Conclusion**

The order and judgment of the district court is modified to provide that petitioner's sentence will be reduced to life imprisonment, unless within ninety (90) days of the date of our mandate in the present case, the Nebraska Supreme Court reweighs the aggravating and mitigating circumstances, conducts an

independent harmless error review, or remands the case to the sentencing court for resentencing.  The order and judgment of the district court is affirmed as modified.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.